**Stephanie HAYS and Gail MacDonald, Plaintiffs–Appellants,**

v.

**SONY CORPORATION OF AMERICA, Defendant–Appellee.**

No. 87–2663.

United States Court of Appeals, Seventh Circuit.

Argued April 6, 1988.

Decided May 25, 1988.

As Amended June 22, 1988.

Emmanuel F. Guyon, Streator, Ill., for plaintiffs-appellants.

John A. Heller, Sidley & Austin, Chicago, Ill., for defendant-appellee.

Before POSNER, FLAUM, and EASTERBROOK, Circuit Judges.

POSNER, Circuit Judge.

The appeal in this copyright suit brings before us a medley of questions involving jurisdiction, copyright, and sanctions. The plaintiffs, Stephanie Hays and Gail Mac-Donald, teach business courses at a public high school in Des Plaines, Illinois. In 1982 or 1983 they prepared a manual for their students on how to operate the school's DEC word processors, and distributed copies to students and to other faculty members. In 1984 the school district, having bought word processors from Sony Corporation of America (the defendant in this suit), gave Sony the plaintiffs' manual and asked Sony to modify it so that it could be used with Sony's word processors. This Sony proceeded to do, resulting in a manual very similar to—in many places a verbatim copy of—the plaintiff's manual. Sony did not charge the school district anything for preparing the manual, which was delivered to the school district in December 1984 and, sometime afterward, distributed to the students. Nor is there any evidence that Sony has sold or disseminated the manual elsewhere.

In February 1985 the plaintiffs, presumably spurred by knowledge of Sony's man-ual, registered their own manual with the Copyright Office, and in July they filed this lawsuit in federal district court. Count I charges a violation of common law (i.e., state) copyright, Count II a violation of statutory (i.e., federal) copyright. The complaint alleges that Sony "has made large profits by reason of appropriating to its own use Plaintiffs' workbook," and demands compensatory and punitive damages, an accounting for profits, an injunction, attorney's fees, and other relief.

On October 31, 1986, the district judge dismissed the action on the ground that the plaintiffs had failed to state a claim. Sony had already filed several motions for sanctions under Rule 11 of the Federal Rules of Civil Procedure, seeking reimbursement of some $47,000 in attorney's fees and related expenses, and the district judge had heard, but not decided, the motions several days before he dismissed the action. Several months later, on February 18, 1987, the judge awarded Sony $14,895.46 in sanctions against the plaintiffs' counsel, Emmanuel F. Guyon, but not against the plaintiffs. Within ten days Guyon filed a motion to vacate the judgment, and the judge denied the motion on September 8. On October 8, a notice of appeal was filed in the district court, stating "that STEPHANIE HAYS and GAIL McDONALD [sic], Plaintiffs above named, hereby appeals [sic] to the United States Court of Appeals for the Seventh Circuit from the Final Judgment entered September 8, 1987, and prior Orders entered October 29, 1986 and February 19, 1987."

The first question is whether the notice of appeal suffices to bring up to us either the judgment dismissing the action (the order of October 31 to which the notice presumably intended to refer) or the order of February 18 (not February 19) awarding sanctions against Guyon. We held in *Exchange National Bank v. Daniels,* 763 F.2d 286, 291–94, modified on other grounds, 768 F.2d 140 (7th Cir.1985), that a judgment disposing of a lawsuit on the merits must be appealed within the prescribed period (here 30 days—yet the notice of appeal was not filed until a year after the judgment dismissing the suit) even if a

motion for attorney's fees is pending. The proceeding on attorney's fees is collateral; it does not affect the appealability of the judgment on the merits. The plaintiffs ask us to recognize an exception for a case such as this where the defendant has bombarded the district court with motions for sanctions, but we do not understand the logic of the exception or think the simple rule adopted in *Daniels* should be complicated by it. The Supreme Court has heard argument in a case in which another circuit followed *Daniels*. See *Budinich v. Becton Dickinson & Co.*, 807 F.2d 155 (10th Cir. 1986), cert. granted, —— U.S. ——, 108 S.Ct. 226, 98 L.Ed.2d 185 (1987). It would be presumptuous for us to forecast the Supreme Court's decision, and in the meantime we shall continue to follow *Daniels*.

■ The notice of appeal was timely with regard to the order of sanctions, because the motion to vacate that order, having been filed within ten days, tolled the time for appealing. See Fed.R.Civ.P. 59(e); Fed.R.App.P. 4(a)(4); *Marine Bank v. Meat Counter, Inc.*, 826 F.2d 1577, 1579 (7th Cir.1987). However, although the sanctions were awarded against Mr. Guyon rather than his clients, the notice of appeal specifies them alone as the appellants. They could not appeal from the order of February 18, because it granted no relief against them. And he did not appeal on his own behalf, but only as their counsel— which was error. See *Walter v. Fiorenzo*, 840 F.2d 427, 433 n. 6 (7th Cir.1988). Rule 3(c) of the Federal Rules of Appellate Procedure requires that the notice of appeal specify the party taking the appeal, and while the last sentence of Rule 3(c) states that "an appeal shall not be dismissed for informality of form or title of the notice of appeal," the omission of the appellant's name cannot be viewed in that light.

Appeals have been dismissed for failure to name the appellant in the notice of appeal, and this is the appropriate course where the appellee might be misled by the omission. In *G.E. Smith & Associates, Inc. v. Otis Elevator Co.*, 608 F.2d 126 (5th Cir.1979) (per curiam), for example, there were two plaintiffs, they had separate claims, both plaintiffs lost in the district court, only one was named in the notice of

appeal, "and no other notice of any kind was ever given that [the other] intended to appeal," *id.* at 127. *Bunch v. Bullard*, 795 F.2d 384, 399 (5th Cir.1986), is even more extreme: two of fourteen plaintiffs were omitted not only from the notice of appeal but also from the brief in the court of appeals! Probably it should not have been considered a Rule 3(c) case at all.

Where there is no possibility that the appellant's violation of Rule 3(c) misled the appellee, however, the violation is harmless and forfeiture of the appeal an excessive sanction. See Fed.R.App.P. 3(c) and Note of Advisory Committee to 1979 Amendment; *Foman v. Davis*, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *United States v. Patel*, 835 F.2d 708, 709–10 (7th Cir.1987); *United States v. One 1977 Mercedes Benz*, 708 F.2d 444, 451 (9th Cir. 1983). A number of cases have allowed the omission of a party from a notice of appeal to be disregarded in these circumstances, see, e.g., *Harrison v. United States*, 715 F.2d 1311 (8th Cir.1983) (per curiam); *Ayres v. Sears, Roebuck & Co.*, 789 F.2d 1173 (5th Cir.1986), although, as noted in *Ayres*, a minority of the circuits strictly require that every appellant be named in the notice of appeals and order the dismissal of any not named. See, e.g., *Farley Transportation Co. v. Santa Fe Trail Transportation Co.*, 778 F.2d 1365, 1368–70 (9th Cir.1985). This court is on the other side of the divide, see *Brubaker v. Board of Education*, 502 F.2d 973, 983 n. 4 (7th Cir.1974), and there we shall remain. The requirement of naming every appellant is a good one; the question is the appropriate sanction for a violation of it. Trivial errors warrant trivial sanctions, not forfeiture of an appeal from a substantial judgment. Sony acknowledges that it was not misled by Guyon's error. Sony knew he was attempting to appeal from the sanctions imposed on February 18 as well as from the dismissal of the copyright suit.

Guyon's appeal from the judgment for sanctions against him is therefore properly before us; whether it has any merit depends on the reasonableness of his pressing the suit as far as he did.

■ The suit is a mixture of the frivolous and the nonfrivolous. The claim of

infringement of a common law copyright is frivolous. Until the Copyright Act of 1976, this country had a dual system of property rights in expression. Until published, a work was protected by state common law principles; the author had a common law copyright. Upon publication, the author's common law copyright terminated; to preserve his property right, he had to obtain a federal copyright. In order to simplify the law without diminishing the rights of authors, the 1976 Act abolished common law copyright as of January 1, 1978, see § 301(a), but made federal copyright attach at the moment of creation, not publication, of any work within the scope of the statute. See 17 U.S.C. § 302(a). Hays and MacDonald wrote their manual long after the abolition of common law copyright.

Guyon argues (for the first time on appeal, and in the face of his clients' contrary affidavits) that though not actually written until 1982, the manual incorporated materials created in the early 1970s, not published, and therefore covered by common law copyright. This argument is irrelevant, as well as untimely and factually unsupported. The statute explicitly abolishes common law copyright as of January 1, 1978, whether the work was created before or after that date. See § 301(a). It is true that "any cause of action arising from undertakings commenced before January 1, 1978," survives, § 301(b)(2), but this means only that if Sony had violated the plaintiffs' common law rights before 1978 their cause of action would have survived. E.g., *Mention v. Gessell*, 714 F.2d 87, 90 (9th Cir. 1983). By the time Sony commenced the activities that are alleged to have infringed the plaintiffs' common law copyright, the plaintiffs no longer had any common law copyright.

▌ Although, as we shall see, the plaintiffs' claim that their statutory copyright was infringed is not frivolous, most of their requests for relief against that alleged infringement are frivolous. The plaintiffs could not obtain statutory damages or attorney's fees, because they did not register their copyright within three months after first publishing the manual (in the special meaning that "publication" bears in the Copyright Act, see 17 U.S.C. § 101) and

before Sony published its allegedly infringing manual. See 17 U.S.C. § 412(2). They could not obtain an accounting for profits, because, according to Sony's uncontradicted affidavit, Sony never obtained any profits from the sale or distribution of the manual—indeed, never sold it. Sony may have earned goodwill or repeat sales by complying with the school district's request to modify the plaintiffs' manual, but the plaintiffs did not seek profits on that theory.

The plaintiffs could not obtain actual damages either. Although in the sanctions hearing Guyon told the judge that the plaintiffs had put out some (unsuccessful) feelers to publishers, he had presented no evidence in the suit itself that his clients had any plans or prospects for publishing their manual or otherwise obtaining a monetary return on it. And of course there is no evidence that Sony killed their market by distributing its version of the manual. Finally, the plaintiffs could not obtain punitive damages. Although authority on the question is surprisingly sparse, it appears to be accepted that punitive damages are not recoverable in federal copyright suits. See *Roy Export Co. v. Columbia Broadcasting System, Inc.*, 672 F.2d 1095, 1106 (2d Cir.1982); *Kamakazi Music Corp. v. Robbins Music Corp.*, 534 F.Supp. 69, 78 (S.D.N.Y.1982); 3 Nimmer on Copyright § 14.02[B], at pp. 14–18 to 14–19 (1987). If there is any reason to doubt this conclusion, Guyon has not indicated to us what it might be. A willful infringer can be required to pay statutory damages of up to $50,000 instead of the usual maximum of $10,000, see 17 U.S.C. § 504(c)(2), but, as already pointed out, the plaintiffs in this case are not eligible for statutory damages. And they have never suggested that Sony was acting willfully. It appears that Sony either believed that the manual it was asked to modify was not copyrighted or believed that the school district owned the copyright. Either belief would have been reasonable; the manual contained no copyright notice or other attempted reservation of rights.

Every request that the plaintiffs made for monetary relief thus was frivolous, yet

they might have been entitled to an injunction, for they may have had a valid statutory copyright that was infringed. See 17 U.S.C. § 502(a). The district judge thought not, because he thought the plaintiffs' manual was a work for hire prepared for the school district—and if it was, the plaintiffs could not obtain a copyright without the school district's consent, as we are about to see. But if it was not a work for hire—and it may not have been—then they could copyright it. And if they had a valid copyright, Sony may well have infringed it. We know that Sony had access to the plaintiffs' manual, and a comparison of it to Sony's manual suggests that Sony copied portions either verbatim or with too thin a paraphrase to defeat a finding of infringement.

Section 201(b) of the Copyright Act provides that "in the case of a work made for hire, the employer or other person for whom the work was prepared is considered the author ... and, unless the parties have expressly agreed otherwise in a written instrument signed by them, owns all of the rights comprised in the copyright." Since one of the definitions of "work made for hire" is "a work prepared by an employee within the scope of his or her employment," 17 U.S.C. § 101; since the plaintiffs were employees of the school district; and since there is no signed (or other) writing that purports to entitle them to copyright a work for hire, the conclusion may seem inescapable that their manual was a work for hire and the copyright was therefore owned by the school district.

Until 1976, the statutory term "work made for hire" was not defined, and some courts had adopted a "teacher exception" whereby academic writing was presumed not to be work made for hire. See Dreyfuss, *The Creative Employee and the Copyright Act of 1976*, 54 U.Chi.L.Rev. 590, 597–98 (1987). The authority for this conclusion was in fact scanty, as explained in Simon, *Faculty Writings: Are They "Works for Hire" Under the 1976 Copyright Act?*, 9 J. College & University L. 485, 495–99 (1982)—but it was scanty not because the merit of the exception was doubted, but because, on the contrary, virtually no one questioned that the academic

author was entitled to copyright his writings. Although college and university teachers do academic writing as a part of their employment responsibilities and use their employer's paper, copier, secretarial staff, and (often) computer facilities in that writing, the universal assumption and practice was that (in the absence of an explicit agreement as to who had the right to copyright) the right to copyright such writing belonged to the teacher rather than to the college or university. There were good reasons for the assumption. A college or university does not supervise its faculty in the preparation of academic books and articles, and is poorly equipped to exploit their writings, whether through publication or otherwise; we may set to one side cases where a school directs a teacher to prepare teaching materials and then directs its other teachers to use the materials too.

The reasons for a presumption against finding academic writings to be work made for hire are as forceful today as they ever were. Nevertheless it is widely believed that the 1976 Act abolished the teacher exception, see Dreyfuss, *supra*, at 598–600; Simon, *supra*, at 502–09; *Weinstein v. University of Illinois*, 811 F.2d 1091, 1093–94 (7th Cir.1987)—though, if so, probably inadvertently, for there is no discussion of the issue in the legislative history, and no political or other reasons come to mind as to why Congress might have wanted to abolish the exception. To a literalist of statutory interpretation, the conclusion that the Act abolished the exception may seem inescapable. The argument would be that academic writing, being within the scope of academic employment, is work made for hire, per se; so, in the absence of an express written and signed waiver of the academic employer's rights, the copyright in such writing must belong to the employer. But considering the havoc that such a conclusion would wreak in the settled practices of academic institutions, the lack of fit between the policy of the work-for-hire doctrine and the conditions of academic production, and the absence of any indication that Congress meant to abolish the teacher exception, we might, if forced to decide the issue, conclude that the exception had survived the enactment of the

1976 Act. A possible textual handle may be found in the words of section 201(b), quoted earlier, which appear to require not only that the work be a work for hire but that it have been prepared *for* the employer —which the Hays–McDonald manual may or may not have been.

We need not try to decide the issue in the present case, for even if the statute abolished the teacher exception this would not necessarily spell victory for Sony. Unlike college and university teachers, high-school teachers normally are not expected to do writing as part of their employment duties. The preparation of the plaintiffs' manual may therefore have been outside the scope of their employment, especially since, so far as appears, they prepared the manual on their own initiative without direction or supervision by their superiors. Cf. *Scherr v. Universal Match Corp.*, 417 F.2d 497, 502–03 (2d Cir.1969) (Friendly, J., dissenting). The school district's action in giving Sony the manual to revise suggests that the school district thought the manual a work for hire—for otherwise it was in danger of being a contributor infringer of the plaintiffs' copyright. (As noted, under the 1976 Act copyright attaches when the work is created; registration merely confers additional remedies, here forfeited by the plaintiffs' delay.) But the plaintiffs did not name the school district as a defendant, and anyway the district's conduct is not conclusive evidence that it believed it owned the copyright; nor would that belief necessarily be a correct one, binding on the plaintiffs. Moreover, the school district has disclaimed ownership of the manual (albeit in a letter that the plaintiffs submitted to the district court after the deadline had passed for submitting materials pertinent to Sony's motion for summary judgment); and this is some evidence that it never regarded the plaintiffs' manual as a work for hire. The plaintiffs' employment contracts with the school district contain no reference to copyright, but the district judge was wrong to infer from this omission that anything the plaintiffs wrote on school time for school purposes was necessarily a work made for hire. The work-for-hire doctrine, which assigns copyright to the employer in the absence of a contractual specification, does not come into play until it is determined that the work *was* one made for hire—a determination which cannot be based on the silence of the employment contract concerning who has the right to copyright the employee's writings.

At argument Sony tried to distinguish between the manual and what college and university teachers write on the ground that the manual is "boring," insignificant, and in short unworthy of legal protection. In making this argument Sony's counsel either betrayed a lack of familiarity with academic writing or was exhibiting an exaggerated deference for members of this panel.

■ We need not decide whether the district judge erred in dismissing the plaintiffs' statutory copyright claim, which if valid would have entitled them to an injunction, though in the circumstances to nothing more; as we noted at the outset, they failed to perfect an appeal from his judgment dismissing their suit. But it was not a frivolous claim, albeit surrounded by frivolous claims both substantive and remedial. The presence of a nonfrivolous claim would create a serious problem if the district judge had based his award of sanctions on a belief that the lawsuit was entirely frivolous, for while we have upheld sanctions against plaintiffs or their attorneys for bringing suits frivolous only in part (most recently in *Kawitt v. United States*, 842 F.2d 951, 954 (7th Cir.1988)), an award of sanctions that was premised on a seriously exaggerated view of the frivolousness of the suit could not stand. But that was not the nature of Judge Mihm's award. Realizing that the claim of statutory infringement had not been negligible, he made clear in awarding sanctions that the problem was not that the complaint had been frivolous but that the suit had not been pursued effectively. He therefore awarded Sony the following percentages of the attorney's fees that it had incurred in defending against the suit: 10 percent of the fees incurred between the filing of the suit in July 1985 and April 1, 1986, by which time it should have been obvious to Guyon, the district judge thought, that the suit was hopeless; 50 percent of the fees incurred

after April 1; and 75 percent of the fees incurred in successfully moving to strike materials filed by Guyon in June 1986, after the close of the record on summary judgment, in a futile effort to stave off dismissal.

This method of calculation was lenient. The common law copyright claim and the requests for monetary relief showed that Guyon had not conducted the reasonable precomplaint inquiry into fact and law required by Rule 11, for that inquiry would have shown that he had no basis for these aspects of the suit. His argument that he didn't know how to find out whether Sony was selling its manual rings hollow, when he did not so much as write Sony (before suing it) to explain his clients' position and to inquire whether Sony was distributing the manual or planning to do so. Of course Sony might not have answered such a letter but at least Guyon would have discharged his duty of inquiring to the extent feasible to do. Copyright law makes it easy for the copyright holder to prove an entitlement to monetary relief (even if he is ineligible for statutory damages, which require no proof of injury), by allowing him to prove and recover either his actual damages or the infringer's profits, whichever is larger, and to presume profits from the gross revenues obtained by the infringer from the infringing work. See 17 U.S.C. §§ 504(a), (b); *Taylor v. Meirick*, 712 F.2d 1112, 1120–22 (7th Cir.1983). It should not have been difficult for Guyon to obtain the minimal facts necessary to decide whether there was a basis for seeking monetary as well as injunctive relief; anyway Guyon didn't try. Certainly more than 10 percent of Sony's attorney's fees before April 1 were incurred in opposing the frivolous aspects of the suit, and by April 1 it should have been plain to Guyon that his clients' only hope was to obtain an injunction for infringement of a statutory copyright—but he continued to press his frivolous claims with undiminished enthusiasm.

In requiring reasonable inquiry before the filing of any pleading in a civil case in federal district court, Rule 11 demands "an objective determination of whether a sanctioned party's conduct was reasonable under the circumstances." *Brown v. Federa-*

*tion of State Medical Boards*, 830 F.2d 1429, 1435 (7th Cir.1987). See also *In re Ronco, Inc.*, 838 F.2d 212, 217 (7th Cir. 1988). In effect it imposes a negligence standard, cf. *Pantry Queen Foods, Inc. v. Lifschultz Fast Freight, Inc.*, 809 F.2d 451, 453 (7th Cir.1987); *Classic Components Supply, Inc. v. Mitsubishi Electronics America, Inc.*, 841 F.2d 163, 165 (7th Cir. 1988); *Gaiardo v. Ethyl Corp.*, 835 F.2d 479, 482 (3d Cir.1987), for negligence is a failure to use reasonable care. The equation between negligence and failure to conduct a reasonable precomplaint inquiry is transparent in *Szabo Food Service, Inc. v. Canteen Corp.*, 823 F.2d 1073, 1083 (7th Cir.1987), where we said that "the amount of investigation required by Rule 11 depends on both the time available to investigate and on the probability that more investigation will turn up important evidence; the Rule does not require steps that are not cost-justified." See also *Fred A. Smith Lumber Co. v. Edidin*, 845 F.2d 750, 751–52 (7th Cir.1988).

Restating the standard in negligence terms helps one to see that Rule 11 defines a new form of legal malpractice, and there is thus no more reason for a competent attorney to fear being sanctioned under Rule 11 than to fear being punished for any other form of malpractice. The difference is merely in the victim. In the ordinary case of legal malpractice the victim is the lawyer's client, though there are exceptions, illustrated by our decision in *Greycas, Inc. v. Proud*, 826 F.2d 1560 (7th Cir. 1987). In the Rule 11 setting the victims are the lawyer's adversary, other litigants in the court's queue, and the court itself. By asserting claims without first inquiring whether they have a plausible grounding in law and fact, a lawyer can impose on an adversary and on the judicial system substantial costs that would have been—and should have been—avoided by a reasonable prepleading inquiry.

■ From his papers in both the district court and this court it is apparent that Mr. Guyon is not a specialist either in copyright law or in federal litigation. As a solo practitioner in the town of Streator, Illinois—population 14,000—Mr. Guyon is not to be

criticized for having failed to acquire expertness in an esoteric field of federal law and in the niceties of federal procedure. But the Rule 11 standard, like the negligence standard in tort law, is an objective standard, as we have said. It makes no allowance for the particular circumstances of particular practitioners. Cf. *Thornton v. Wahl*, 787 F.2d 1151, 1154 (7th Cir.1986). There is no "locality rule" in legal malpractice, see Restatement (Second) of Torts, § 299A, comment g (1965), and while a legal specialist may be held to an even higher standard of care than a generalist, see *Sparks v. NLRB*, 835 F.2d 705, 707 (7th Cir.1987); cf. Prosser and Keeton on the Law of Torts 185 (5th ed. 1984), the generalist acts at his peril if he brings a suit in a field or forum with which he is unacquainted. A lawyer who lacks relevant expertise must either associate with him a lawyer who has it, or must bone up on the relevant law at every step in the way in recognition that his lack of experience makes him prone to error. See Bridgman, *Legal Malpractice—A Consideration of the Elements of a Strong Plaintiff's Case*, 30 S.Car.L.Rev. 213, 227–30 (1979). He must litigate very carefully, just as a new driver must drive very carefully. Mr. Guyon failed to heed this precept, booting what may have been a meritorious though modest claim by pressing frivolous claims and then failing to file a timely appeal from the dismissal of the action.

Sony asks us to order Guyon to pay its costs of defending this appeal. See Fed.R. App.P. 38. The appeal is frivolous insofar as it attacks the summary judgment, because that part of the appeal is untimely under precedents that Guyon does not challenge (or even acknowledge), instead frivolously asking us to carve out an arbitrary and unworkable exception. The appeal from the order of sanctions is not frivolous, however, because it was arguable that the district judge's misunderstanding of the work-for-hire issue might have infected his award of sanctions, though we have concluded that it did not. The award could not be questioned in its entirety, because most of the plaintiffs' submissions in the district court had been unequivocally frivolous— the common law copyright claim and the

claims for monetary relief for infringement of statutory copyright—but the portion of Guyon's brief devoted to the award of sanctions does not dwell on these aspects, and we have cautioned repeatedly against cutting the sanctions apple too fine. See, e.g., *Kawitt v. United States, supra*, 842 F.2d at 954.

■ At argument Sony advanced another ground for reimbursement of its attorney's fees incurred on this appeal in defending the award of sanctions by the district court. Sony suggests that just as a civil rights plaintiff awarded fees under 42 U.S.C. § 1988 for prevailing in the district court is entitled to fees as a matter of course for successfully defending the judgment in the court of appeals, see, e.g., *Bond v. Stanton*, 630 F.2d 1231, 1234 (7th Cir.1980), so a party awarded fees under Rule 11 should be entitled to fees as a matter of course for successfully defending the fee award in the court of appeals. The expense was caused by the same conduct that moved the district court to award fees in that court; and to the extent that a party reasonably incurs substantial fees merely to defend the award, yet cannot recover its expense, the deterrent and compensatory objectives of awarding sanctions are thwarted. We were persuaded by a similar argument in *Tamari v. Bache & Co. (Lebanon) S.A.L.*, 729 F.2d 469, 475 (7th Cir.1984), as was one of our sister circuits in *Westmoreland v. CBS, Inc.*, 770 F.2d 1168, 1179–80 (D.C.Cir.1985), a decision that relies in part on *Tamari*. Rule 11 is a fee-shifting statute, and a uniform body of law has grown up about such statutes entitling a party who successfully invokes the statute to obtain reasonable fees incurred in obtaining the statutory fees, plus reasonable fees in defending the award on appeal. See, e.g., *Westmoreland v. CBS, Inc., supra*, 770 F.2d at 1179 (citing cases); *McDonald v. Schweiker*, 726 F.2d 311, 314 (7th Cir.1983). There is no reason to complicate this body of law by making an exception for Rule 11 fee-shifting.

■ However, Sony's argument encounters two problems in this case. First, just as the *district* court cannot award fees under Rule 38 of the appellate rules, see *Flip*

Side Productions, Inc. v. Jam Productions, Ltd., 843 F.2d 1024–1037 (7th Cir. 1988), so the court of appeals cannot award fees under Rule 11 of the civil rules, see Hill v. Norfolk & Western Ry., 814 F.2d 1192, 1200 (7th Cir.1987). In both Tamari and Westmoreland the district court had awarded fees (under Rules 37 and 11, respectively, the former authorizing sanctions for abuse of pretrial discovery). If Sony wants fees under Rule 11, it must ask the district court for them. Second, the argument does not appear in Sony's brief. With the benefit of hindsight it can perhaps be seen to be implicit, but that is not good enough; to be preserved, an argument must be pressed, and not merely intimated. See, e.g., Yatvin v. Madison Metropolitan School District, 840 F.2d 412, 420–21 (7th Cir.1988); Hershinow v. Bonamarte, 735 F.2d 264, 266 (7th Cir.1984).

To summarize, the appeal is dismissed insofar as it attacks the judgment of October 31, 1986. The award of Rule 11 sanctions against Mr. Guyon is affirmed. Sony is directed to submit to the clerk of this court within 15 days a statement of its fees and expenses reasonably incurred in defending against so much of Guyon's appeal as sought to overturn the judgment on the merits.

POSTSCRIPT

We need not have been so timid (see ante at 414) about forecasting the Supreme Court's decision in Budinich. For while our opinion was at the printer the Supreme Court rendered its decision, upholding the principle announced in our decision in Exchange National Bank v. Daniels, on which we had relied in the present case in holding that the plaintiffs' appeal on the merits was untimely. See Budinich v. Becton Dickinson & Co., ___ U.S. ___, 108 S.Ct. 1717, 100 L.Ed.2d 178 (1988).

An even more recent decision by the Court requires a further modification. Our opinion reaffirmed the position of this circuit that the failure to name an appellant in the notice of appeal does not require the dismissal of that appellant if the appellee has not been misled. This position was expressly rejected by the Supreme Court in a decision rendered shortly after our decision. See Torres v. Oakland Scavenger Co., ___ U.S. ___, 108 S.Ct. 2405, ___ L.Ed.2d ___ (1988). We ought therefore have dismissed Guyon's appeal from the award of sanctions. But as we affirmed the award, thus bringing about the same result as if we had dismissed the appeal, no harm was done.