| EXPENSE CATEGORY | AMOUNT |
|---|---|
| Fees of Expert Witness: | $ 8,631.75 |
| TOTAL: | $28,400.96 |

(Schal Defendants' Exs. 20, 34).

**William A. BRANDT, et al., Plaintiffs,**

v.

**SCHAL ASSOCIATES, INC., et al., Defendants.**

**No. 85 C 357.**

United States District Court, N.D. Illinois, E.D.

July 17, 1990.

George Spellmire, Joshua G. Vincent, Hinshaw, Culbertson, Moelmann, Hoban & Fuller, Chicago, Ill., for plaintiffs.

Jeff D. Harris, Foran, Wiss & Schultz, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

This Court's detailed May 2, 1990 Findings of Fact ("Findings") and Conclusions of Law ("Conclusions"), collectively referred to as "Opinion II" 131 F.R.D. 485:[1]

(a) held that Schal Defendants are entitled to receive the sum of $351,664.96 (that figure was held to be the total amount of reasonable attorneys' fees and expenses incurred by Schal Defendants as a direct result of Campbell's violations of Rule 11)—subject to appropriate further adjustments—from Campbell as sanctions under Rule 11; and

(b) directed the parties to address, by further submissions, the remaining question of "what additional amount should be added to that figure as a sanction to give effect to the delay factor sustained by Schal Defendants in obtaining the recovery of substantial amounts incurred by reason of Campbell's Rule 11 violations."

Opinion II led to a flurry of activity, both in response to that direction and beyond the single issue thus identified:

1. Schal Defendants moved that this Court reconsider its disallowance in Conclusion 34 of the portion of Schal Defendants' attorneys' fees incurred in conjunction with Campbell's appeal to our Court of Appeals, 854 F.2d 948 (7th Cir. 1988). That led to a full briefing of that issue.

2. Both parties did respond (though on an extended schedule) on the delay factor identified at the conclusion of Opinion II. Schal Defendants suggested a calculation based on the cost of money in prime-interest-rate terms, while Campbell opposed any award at all for delay (or suggested that at most a short-term government securities rate would be proper).

3. At a brief status hearing held just after both matters just referred to had become fully briefed, this Court directed the litigants to address two issues:

(a) what the delay factor calculations through May 31, 1990 (the date dealt with in Schal Defendants' original submission)[2] would become if Schal Defendants' motion for reconsideration were granted; and

(b) what the delay factor calculations should be for the period beginning June 1 (on each alternative—whether this Court granted or denied Schal Defendants' motion for reconsideration).

4. When the parties responded to the latter directive, Campbell's counsel disclosed that Campbell had filed for bankruptcy in the United States Bankruptcy Court for the Eastern District of Missouri, Eastern Division (Case No. 90–02458–BKC–BSS), and his counsel there-

---

1. That usage will be employed where this opinion finds occasion to refer to Opinion II generally, rather than to a specific Finding or Conclusion ("Opinion II" is used because the term "Opinion" has been used in Opinion II to designate this Court's August 16, 1988 memorandum opinion and order, 121 F.R.D. 368). For convenience all defined terms in Opinion II will be given the identical usage here, without any need to repeat those definition.

2. Further references to dates without year designations are to dates during 1990.

fore sought a stay of further proceedings here by reason of the automatic bankruptcy stay provisions of 11 U.S.C. § 362 ("Section 362"). Schal Defendants responded to that latter suggestion by citing a decision (*O'Brien v. Fischel*, 74 B.R. 546 (D.Hawaii 1987)) that rejected such a stay of Rule 11 proceedings by calling upon the exception provided by Section 362(b)(4).

During the course of the status hearing when *O'Brien* was sought to be invoked by Schal Defendants, this Court reviewed that opinion and found the reasoning there unpersuasive. Accordingly this Court suggested that Schal Defendants seek a lifting of the automatic Section 362 stay from the Bankruptcy Court. That relief was in fact obtained on June 20.[3]

At the next status hearing on June 22, this Court asked the parties to brief the potential impact on Schal Defendants' pending motion for reconsideration of the recently-issued Supreme Court decision in *Cooter & Gell v. Hartmarx Corp.*, — U.S. ——, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990). That has been done,[4] and the current motions are now ripe for decision.

### Modification of Conclusion 34

■ Campbell's lawyers in this proceeding (apparently counsel selected by his malpractice insurance carrier [5]) have regrettably carried on in the same disturbing spirit that Campbell manifested throughout this litigation, as dealt with so extensively in Opinion II. There is not much point in expanding the discussion by going back to review and itemize the various distressing aspects of the lawyers' representation,[6] but the relevant one here is that Conclusion 34—the one at issue—had been the direct

---

3. What the Bankruptcy Court did was to modify the stay in two respects:
   1. to permit this Court to conduct its next scheduled status hearing on June 22; and
   2. to permit the entry of an order "liquidating the amount of Schal Associates, Inc.'s claim against the Debtor [Campbell]."

   Quite understandably the Bankruptcy Court conditioned that partial lifting of the stay by providing that Schal Defendants "shall take no action to enforce their claim against the Debtor or the Debtor's estate other than through appropriate proceedings in this bankruptcy case."

4. Indeed, as the later discussion in the text reflects, Campbell's lawyers have used this Court's request as the springboard for going well beyond the requested inquiry.

5. During the course of the proceedings, this Court has been advised that Campbell was successful in a state court declaratory judgment action brought to compel his insurance carrier to provide coverage for the Rule 11 sanctions at issue before this Court. Though Campbell's counsel have advised that the decision is now on appeal, the carrier is apparently providing counsel for Campbell's defense in the interim (indeed a number of this Court's decisions in diversity cases, applying Illinois law, have dealt with the concept that a liability insurer's obligation to defend is typically broader than its obligation to indemnify). This opinion later touches briefly upon one aspect of the appropriate sanctions that may be affected by such representation by a designated, rather than a self-selected, set of lawyers.

6. One current instance does bear mention as reflective of the approach all too frequently taken by Campbell's lawyers during the course of the satellite litigation under Rule 11. At page 10 of their May 30 Memorandum they say:

   It should also be noted that Schal's attorneys have not produced cancelled checks as requested by Respondents that substantiate that in fact all of these fees were billed to and paid by the client.

   Injection of that issue (or more accurately, nonissue) into the controversy was really outrageous—both (1) because it did not disclose that the first time that Campbell's lawyers had made any request for such cancelled checks was just *five days* before they filed that May 30 Memorandum (although the Memorandum clearly conveyed the false impression of some delinquency in production on the part of Schal Defendants' attorneys) and (2) because the request itself was both needless and vexatious. Schal Defendants' response provided chapter and verse as to the extensive disclosure that they had already made of their detailed books—and they demonstrated the wholly unwarranted nature of the request as well as the inordinate, time consuming and expensive efforts that would be forced in order to retrieve those additional documents from Schal Defendants' piles of cancelled checks (or the bank's microfilm records) over a five-year time span (of course the books of Schal Defendants' lawyers—as if anything at all were necessary to verify what those lawyers themselves had stated as officers of the court—had already confirmed the fact that they had received the payments). Campbell's lawyers have now backed off from the sheer harassment that they had sought to impose by their demand.

product of an affirmative misrepresentation on the part of Campbell's lawyers: their false statement that Jeff Harris, Esq. (the counsel for Schal Defendants) was the only one who had participated as the lawyer for *all* defendants in the appeal, so that Schal Defendants' fee request for services on appeal had not properly separated out the Rule–11–allowable amount allocable to themselves alone.

Schal Defendants have now exposed that flat misrepresentation by pointing out that the other appellee, Northwestern University, was separately represented on the appeal as it had been before this Court—so that there was no occasion for any allocation of the services rendered on appeal by Schal Defendants' lawyers.[7] But that exposure has then been met with this response by Campbell's lawyers (in their May 30 Mem. 4):

> Motions to reconsider are ordinarily granted only to correct clear errors of law or fact, or to present newly discovered evidence which could not have been adduced during the pendency of the motion. *Publisher's [sic] Resource[, Inc.] v. Walker–Davis Publication[s, Inc.]*, 762 F.2d 557, 561 (7th Cir.1985). The evidence presented on defendant's motion to amend findings cannot be considered newly discovered evidence since the evidence of who represented whom on appeal was available at the time the fee request was made and should have been presented to this Court by Schal's attorneys to assist the Court in determining the reasonableness of the fee request. Certainly, it would have been of benefit for Schal's attorneys to explain that all of their work was performed for one client and that there was no overlap in billing. If claiming newly discovered

evidence, the moving party must demonstrate that the evidence was in existence at the time of the trial, but that the moving party was excusably ignorant.

That presentation really compounds the egregiousness of the conduct by Campbell's counsel, because it too is really misleading. As Schal Defendants' June 1 R. Mem. 2 accurately points out:

> The incorrect notion that attorneys at Foran, Wiss & Schultz represented both the Schal Defendants *and* Northwestern University on the appeal was not introduced during the July 1989 evidentiary hearing. Rather, Campbell waited until December 4, 1989 to make this erroneous contention, when he filed his Reply to Schal Defendants' Proposed Findings. The Schal Defendants submit that Campbell deliberately attempted to mislead the Court when he belatedly made this assertion, because Campbell knew then, as he always has, that Northwestern was represented on appeal by the same attorneys from Sidley & Austin who had represented Northwestern in the trial court.[8]

In a way it is ironic that Campbell's counsel sees fit to invoke *Publishers Resource*[9] in aid of their position—for its operative language is a quotation from one of this Court's own opinions, *Keene Corp. v. International Fidelity Insurance Co.*, 561 F.Supp. 656, 665–66 (N.D.Ill.1982), *aff'd and adopted*, 736 F.2d 388, 393 (7th Cir.1984). *Keene* was a variant of this Court's frequent reference to the limited role that is appropriate to motions for reconsideration, as to which it most commonly draws upon the statement by the late Judge Dortch Warriner in *Above the Belt, Inc. v. Mel Bohannan Roofing Co.*, 99

---

**7.** That was of course well known to Campbell, who argued the appeal in the Seventh Circuit. Because this Court was naturally not privy to the proceedings on appeal, it had no reason to mistrust (or even question) the representation that Campbell had made in the final filing that preceded the issuance of Opinion II.

**8.** [Footnote by this Court] As has already been mentioned and as can readily be seen, the fact—*known to Campbell*—that Schal Defendants' lawyers had represented only Schal Defendants on

the appeal made any question of allocating their services wholly imaginary. It was thus inexcusable for Campbell's lawyers to say otherwise—to fault Schal Defendants' lawyers for failing to provide a totally needless explanation—and to do so in the final submission before this Court's issuance of Opinion II.

**9.** This (lacking an apostrophe) is the correct version of the name of the plaintiff in that case.

F.R.D. 99 (E.D.Va.1983).[10] Conclusion 34 did indeed reflect a misapprehension on this Court's part justifying its reconsideration—but that misapprehension was a direct consequence of the flat-out misrepresentation that had been made by Campbell's present lawyers.

On the merits, then, Schal Defendants are clearly right in urging that the basis on which Conclusion 34 had rejected their claim for legal services on the appeal was mistaken. But in the meantime the Supreme Court has decided *Cooter & Gell.* In that respect Conclusion 34 had specifically reflected this Court's perception that it was bound by our Court of Appeals' rulings that allowed the recapture of fees paid for such appellate services as a part of Rule 11 sanctions "[u]nless and until the Supreme Court teaches otherwise"—a specific reference to *Cooter & Gell.* It is therefore most constructive to turn to the effect of that decision on the allowability of sanctions for the services rendered by Schal Defendants' lawyers in their successful work on the appeal here.

Campbell's most recent memorandum views that question as a simple one.[11] Because *Cooter & Gell*, 110 S.Ct. at 2461–63 held that a district court could not impose under Rule 11 the obligation to pay the opponent's fees for services rendered in upholding the original Rule 11 sanction on appeal (thus rejecting our Court of Appeals' position as expressed in such cases as *Hays v. Sony Corp. of America*, 847 F.2d 412, 419–20 (7th Cir.1988) [cited in *Cooter & Gell*, 110 S.Ct. at 2461] and *Borowski v. DePuy, Inc.*, 876 F.2d 1339, 1342–43 (7th Cir.1989)), and because the portion of Schal Defendants' fees now under consideration here was in fact incurred in work done before our Court of Appeals, Campbell urges that *Cooter & Gell* totally

forecloses allowability of those fees as a sanction by this Court.

That contention of course carries considerable force as a proposed syllogism. But it is not quite as clear-cut a question as Campbell would have it. It is worth quoting the potentially relevant language (though lengthy) directly from *Cooter & Gell*, 110 S.Ct. at 2461:

> On its face, Rule 11 does not apply to appellate proceedings. Its provision allowing the court to include "an order to pay to the other party or parties the amount of the reasonable expense, incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee" must be interpreted in light of Federal Rule of Civil Procedure 1, which indicates that the rules only "govern the procedure in the United States district courts." Neither the language of Rule 11 nor the Advisory Committee Note suggests that the Rule could require payment for any activities outside the context of district court proceedings.

> Respondents interpret the last sentence of Rule 11 as extending the scope of the sanction to cover any expenses, including fees on appeal, incurred "because of the filing." In this case, respondents argue, they would have incurred none of their appellate expenses had petitioner's lawsuit not been filed. This line of reasoning would lead to the conclusion that expenses incurred "because of" a baseless filing extend indefinitely. Cf. W. Keeton, D. Dobbs, R. Keeton, & D. Owens, Prosser and Keeton, on Law of Torts § 41, p. 264 (5th ed. 1984) ("In a philosophical sense, the consequences of an act go forward to eternity.... As a practical matter, legal responsibility

---

**10.** *Above the Belt* was not cited or quoted in *Keene* because of the quite different context of the latter case, which dealt with a party's duty to put *everything* forward on a summary judgment motion. But what that case said in relevant part was this (99 F.R.D. at 101):

> The motion to reconsider would be appropriate where, for example, the Court ... has made an error not of reasoning but of apprehension.

**11.** That opinion on counsel's part frankly carries no great weight here. As the later portions of this opinion will reflect, Campbell's counsel also seeks to ascribe some effects to *Cooter & Gell* that can hardly have been advanced without counsel themselves creating independent concerns about counsel's *own* conduct in Rule 11 terms.

must be limited to those causes which are so closely connected with the result and of such significance that the law is justified in imposing liability"). Such an interpretation of the rule is overbroad. We believe Rule 11 is more sensibly understood as permitting an award only of those expenses directly caused by the filing, logically, those at the trial level. A plaintiff's filing requires the defendant to take the necessary steps to defend against the suit in district court; if the filing was baseless, attorneys' fees incurred in that defense were triggered by the Rule 11 violation. If the district court imposes Rule 11 sanctions on the plaintiff, and the plaintiff appeals, the expenses incurred in defending the award on appeal are directly caused by the district court's sanction and the appeal of that sanction, not by the plaintiff's initial filing in district court.

In this case the disputed fees were *not* "expenses incurred in defending the [Rule 11] award on appeal," but rather in defending the *merits* of this Court's rulings as to Schal Defendants on appeal. As Findings 1–32 reflect, Campbell and his client decided to abandon the RICO claim against Schal Defendants by a voluntary dismissal only *after* Schal Defendants had already been forced to jump through a great many highly expensive hoops. This Court conditioned the granting of that motion for voluntary dismissal without prejudice on just two conditions (Finding 31):

1. Campbell's client had to pay Schal Defendants' statutory costs.

2. If the RICO claim were ever refiled (always a possibility under a dismissal without prejudice), that refiling would have to be in this Northern District of Illinois (an obvious anti-forum-shopping requirement).

And only if Campbell's client failed to comply with those conditions would the without-prejudice dismissal of the RICO claim be converted into a with-prejudice dismissal (Finding 32).

Findings 33–41 recount the events that followed this Court's granting of the voluntary dismissal, including Campbell's purported appeal to the Seventh Circuit. On appeal our Court of Appeals determined that:

1. It had *no jurisdiction* to entertain the contention that this Court had abused its discretion by imposing the limited conditions described above—but there had been no abuse of discretion involved in any event (854 F.2d at 954–55).

2. There was also no abuse of discretion in this Court's rejection of the Campbell-authored objections to Schal Defendants' bill of costs (*id.* at 955).

All the fees paid in conjunction with that appeal are the ones currently at issue.

Certainly the services of counsel for Schal Defendants in that respect might arguably be viewed as having been incurred "because of the filing of the [Rule 11–violative] pleading" by Campbell in *this* Court in a more direct way than the appellate services that were dealt with in *Cooter & Gell.* "Proximate cause," the concept dealt with in Prosser and Keeton and extended to Rule 11 jurisprudence by the lengthy quoted excerpt from *Cooter & Gell,* is not a bright-line standard. Where Schal Defendants were forced to go before the Court of Appeals only by reason of Campbell's effort to uphold the very filings in this Court that were themselves the basis for the Rule 11 violation, that activity might well be considered as "so closely connected with the result and of such significance that the law is justified in imposing liability" (the Prosser and Keeton construct quoted in *Cooter & Gell*) under Rule 11 for those appellate services too.

But on balance this Court finds that possibility is overridden by the literal breadth of the quoted *Cooter & Gell* language and by the important fact that our Court of Appeals had ample power to deal with the expenses incurred on appeal under its *own* rules if it were asked to find the appeal "frivolous" in the legal sense (see Fed.R. App.P. 38 and the discussion in *Cooter & Gell,* 110 S.Ct. at 2461–62, immediately following the already-quoted portion of that opinion). This Court therefore denies Schal Defendants' motion for reconsideration of Conclusion 34.

### Other Related Adjustments

■ As Schal Defendants' most recent memorandum accurately reflects (June 26 Mem. 8), however, they cannot be faulted for having sought (before *Cooter & Gell* was decided) the just-discussed modification of Conclusion 34. It has already been explained that Schal Defendants' motion to modify had been occasioned by Campbell's counsel's outright and blatant misrepresentation—*by a filing in this Court*—that Schal Defendants' lawyers had also represented Northwestern University on the appeal, so that the lawyers had failed to allocate their services between Schal Defendants (services that under then-existing Seventh Circuit case law were compensable under Rule 11) and Northwestern University (services that would of course be noncompensable to Schal Defendants under Rule 11).

If Campbell's counsel had been truthful, Opinion II would simply have approved rather than disapproved the disputed amount addressed in Conclusion 34. And although that result would *later* have been adjusted (just as it has been in the prior section of this opinion) to conform to the teaching of *Cooter & Gell*, Schal Defendants' counsel would never have been compelled to file their motion for modification (because the Findings and Conclusions would have been issued based on the parties' original submissions).

Of course nothing in *Cooter & Gell* itself bars sanctions covering the fees that were incurred by Schal Defendants in the extra and needless activity triggered by the further bad faith filing in *this* Court (certainly "bad faith" in the objective sense, and most likely in the subjective sense as well). And thus the question is really one of what constitutes an "appropriate sanction" (the Rule 11 standard) for that independently Rule–11–violative filing by Campbell's counsel—their filing of the reply memorandum (the last document filed in the voluminous Rule 11 substantive submissions) that misled this Court as to the nature of the work done by Schal Defendants' lawyers' on the appeal.[12] Where such a direct misrepresentation to this Court by a lawyer is involved, fee shifting is indeed an "appropriate sanction"—why should Schal Defendants, rather than Campbell and his counsel, bear the cost of services forced to be incurred by Schal Defendants as so direct a result of such egregious conduct? [13]

Accordingly the full $7,511.10 in fees and expenses requested in Schal Defendants' Fifth Supplemental Schedule will be charged to Campbell as an appropriate sanction. Moreover, no other arguably marginal fine-tuning adjustments will be made in the award by reason of the decision in *Cooter & Gell*.[14]

12. Even though the following principle does not extend to services rendered before an appellate court because of the inherent limitations on Rule 11, this aspect of our Court of Appeals' approach as expressed in *Borowski*, 876 F.2d at 1342 (footnote omitted) remains both viable and entirely accurate post–*Cooter & Gell*:

Our decisions in *Hays* and *Gorenstein Enterprises v. Quality Care–USA, Inc.*, 874 F.2d 431 (7th Cir.1989), make clear that Rule 11 provides a "make-whole" remedy to place the prevailing party in the position it would have been had the frivolous argument not been advanced in the district court.

And just as the appropriateness of fee shifting as a Rule 11 sanction does not necessarily correlate with a party's ultimate success on the issue as to which a Rule–11–violative filing has been made (see discussion in G. Joseph, *Sanctions: The Federal Law of Litigation Abuse* § 11(f), at 169 (1989)) so Campbell's having prevailed on the exclusion of the appellate services on a ground wholly independent of his Rule-violative conduct does not insulate him from liability for the services improperly thrust on Schal Defendants as the direct result of his misrepresentation.

13. This Court is not of course in a position to evaluate just who bears the responsibility for that misrepresentation. If it should properly be ascribed to Campbell's lawyers as contrasted with Campbell himself, this Court expects that portion of the award to be borne by counsel directly and not recovered by them from Campbell. This is related to the matter discussed in n. 5, and if counsel are indeed the designees of Campbell's malpractice carrier they owe Campbell an independent professional responsibility to avoid any possible conflicts of interest of that or any other kind.

14. That decision flows both from the survival of the *Borowski*-stated principle quoted in n. 12 and from the post–*Cooter & Gell* principle (quoted later in the text) from our Court of Appeals' June 29 decision in *Samuels v. Wilder*, 906 F.2d 272 (7th Cir.1990).

### Basic Reconsideration of Opinion II

■ Campbell's counsel have in their most recent (June 26) filing addressed not only the question posed to both sides by this Court—the effect of *Cooter & Gell* on the inclusion of appellate fees in the Rule 11 sanction—but also three other subjects:

1. one quite justifiable issue, that dealt with at the very end of the preceding section: the question of awarding fees for the efforts of Schal Defendants in *this* Court to recover their appellate fees under Rule 11; and

2. two wholly unjustified issues, as to which Campbell seeks to make unmerited capital of a single clause in the lengthy *Cooter & Gell* opinion:

(a) Campbell claims that "fees on fees" are never chargeable against the Rule 11 violator.

(b) Campbell also urges that this Court should reconsider the Findings and Conclusions in their entirety.

Both those last two issues can be disposed of quickly.

In the course of its opinion rejecting a sanction, via Rule 11, for fees expended in defending a Rule 11 award on appeal, *Cooter & Gell*, 110 S.Ct. at 2462 said:

As Rule 11 is not a fee-shifting statute, the policies for allowing district courts to require the losing party to pay appellate, as well as district court attorneys' fees, are not applicable. "A movant under Rule 11 has no entitlement to fees or any other sanction, and the contrary view can only breed appellate litigation." American Judicature Society, [Rule 11 in Transition, The Report of the Third Circuit Task Force on Federal Rule of Civil Procedure 11,] at 49 [ (Burbank, reporter 1989) ].

Campbell's counsel seizes on an attempted carving-out of the first clause alone ("Rule 11 is not a fee-shifting statute") to distort the *Cooter & Gell* message into one that says Rule 11 does not really *authorize* the imposition of fees incurred in the Rule 11 proceeding itself as part of the "appropriate sanction" under the Rule. That of course is sheer nonsense—the Rule itself

gives only one example of what may be an "appropriate sanction":

an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.

If a Rule 11 violator could blithely compound its offense by thrusting onto its victim the cost of meeting a Stalingrad defense as to the proper amount of a fee-shifting sanction, that would totally defeat the "make-whole" purpose of the Rule. That conclusion is entirely at one with the proximate-cause approach approved in *Cooter & Gell*.

What *Cooter & Gell* obviously intended to convey is simply that although Rule 11 mandates the imposition of an "appropriate sanction" for Rule-violative conduct (that is the effect of the words "shall impose ... an appropriate sanction"), it does not *mandate* that the sanction be one of dollar-for-dollar fee-shifting. As a matter of fact, the language that Campbell now seeks to pounce upon can really cut both ways. Post–*Cooter & Gell* our Court of Appeals has made that very same point as part of a caveat that Rule 11 sanctions are not *limited* to the fee burden that has been thrust on the opponents as a but-for consequence of the Rule 11 violation—less than a month ago *Samuels v. Wilder*, 906 F.2d at 276 (emphasis in original) said:

We remind counsel for plaintiffs, however, that Rule 11 and § 1927 are *sanctions* rules, not compensation devices. Persons required to pay sanctions have no entitlement to a perfect match between the award and the defendants' legal fees, and the discretion the district judge possesses in deciding whether the conduct is sanctionable extends as well to the selection of the sanction.

Clearly fees can and should be shifted whenever that represents the "appropriate sanction"—*Cooter & Gell*, 110 S.Ct. at 2454 makes that crystal-clear:

Rule 11 imposes a duty on attorneys to certify that they have conducted a reasonable inquiry and have determined that any papers filed with the court are well-

grounded in fact, legally tenable, and "not interposed for any improper purpose." An attorney who signs the paper without such a substantiated belief "shall" be penalized by "an appropriate sanction." Such a sanction may, but need not, include payment of the other parties' expenses. See *ibid.* Although the rule must be read in light of concerns that it will spawn satellite litigation and chill vigorous advocacy, *ibid.*, any interpretation must give effect to the rule's central goal of deterrence.

Perhaps the best illustration of the misshapen twist that Campbell's counsel seeks to place on the single isolated clause in *Cooter & Gell* is in their June 26 Mem. 4 statement of position:

Relying upon traditional concepts of proximate cause, *Cooter & Gell* suggests that it is only those fees which have been thrust upon the opposing party by reason of the meritless lawsuit which may properly be awarded under Rule 11. Logically, the fees incurred in pursuit of a Rule 11 award are not similarly "thrust upon" the opponent or even "directly caused" by the initial Rule 11 violation. Rather, it is an expense voluntarily assumed by the party who chooses to pursue Rule 11 sanctions. Fairly read, the *Cooter & Gell* decision places a limit on Rule 11 awards that extends no further than the fees resulting directly from the pleading filed in violation of the Rule. The concept of a "fees on fees" award finds no support in the language of *Cooter & Gell* (or Rule 11 itself, for that matter); indeed, such an award would be contrary to the philosophy and approach advocated in *Cooter & Gell.*

Given their own scorched-earth defense of the Rule 11 motion—including the prolonged evidentiary hearing and challenges that have been reflected and dealt with in the lengthy Findings and Conclusions—it is the height of absurdity for Campbell's counsel to label Schal Defendants' conduct as "voluntary" (unless, of course, by way of a wholly impermissible contrast with the alternative of letting the Rule–11–violative opponent—Campbell—get away with the massive expense of hundreds of thousands of dollars needlessly thrust upon his adversary).

Accordingly Campbell's invitation to revisit Opinion II as to the includability of "fees on fees," or as to what the June 26 Mem. 4–5 labels "a fundamental error in this Court's philosophical view of Rule 11," is rejected in its entirety. At this point, then, the $351,664.96 referred to in Opinion II has not only been reconfirmed as having been validly determined and imposed but has been supplemented by the $7,511.10 reflected in Schal Defendants' Fifth Supplemental Schedule.

### Delay Factor

■ Where attorneys' fees are awarded pursuant to statutory authority (as for example under such statutes as 42 U.S.C. § 1988 or the Petroleum Marketing Practices Act, 15 U.S.C. § 2805(d)(1)(C)), the determination of "reasonable attorneys' fees" has quite sensibly taken into account the obvious fact that the lawyer who receives such fees at the conclusion of litigation is worse off economically than if those fees had been paid "reasonably promptly as the legal services are performed" (a concept approved by no lesser authority than the Supreme Court, *Missouri v. Jenkins,* —— U.S. ——, 109 S.Ct. 2463, 2469, 105 L.Ed.2d 229 (1989), reconfirming in the course of its analysis (*id.* at 2468–69) the earlier discussion in *Pennsylvania v. Delaware Valley Citizens' Council,* 483 U.S. 711, 716, 107 S.Ct. 3078, 3081, 97 L.Ed.2d 585 (1987)). Various approaches have been taken by the courts to deal with that delay factor, such as the most easily administered one of measuring reasonable fees by the *current* rates charged by the lawyers even where the services were rendered in past periods when reasonable rates were lower.

■ But this Court has explained in some detail in its Appendix in *Lippo v. Mobil Oil Corp.,* 692 F.Supp. 826, 838–39 (N.D.Ill.1988) why that approach may frequently purchase mere simplicity of calculation at the expense of distorting what is sought to be measured. Instead a more precise approach to the determination of "reasonable fees," and one more fair to

*both* parties, calls for accounting for the delay factor in the traditional way: by measuring the time-value of money (a concept implicitly approved by the Supreme Court in *Jenkins,* 109 S.Ct. at 2468–69 [15] and as expressly approved this year by our Court of Appeals in *Fleming v. County of Kane,* 898 F.2d 553, 564–65 (7th Cir.1990)). Finally, this Court has also explained in *Lippo,* 692 F.Supp. at 839–42 why the measure for the time-value of money that is indeed fairest to both sides is that of the prime rate, rather than such alternatives as either the riskless rate of government securities or the risk rate that is embodied in the party's own actual costs of borrowing.[16]

In this case the fees have been paid by Schal Defendants on an ongoing basis, so the inquiry here is not what is needed to compensate the lawyers for any delay in *their* compensation for the legal services forced on their clients by the Rule–11–violative conduct. But once it is concluded—as this Court has—that the "make whole" remedy represents the appropriate sanction (*Borowski,* 876 F.2d at 1342 [17]), the question simply translates itself into what is necessary to make *Schal Defendants* whole for the money that they should not have had to expend on lawyers' fees but were compelled to as the proximate result of Campbell's conduct.[18]

That means the delay factor that is operative where lawyer nonpayment is involved translates directly into the additional real-world cost to the paying client that stems from its having been deprived of the use of money that it has been forced to pay to its

**15.** *Jenkins'* quotation from *Delaware Valley* included the following language (citations omitted, emphasis added):

> In setting fees for prevailing counsel, the courts have regularly recognized the delay factor, either by basing the award on current rates *or by adjusting the fee based on historical rates to reflect its present value.*

And that emphasized portion was clearly what was later being referred to in the following holding stated in *Jenkins* itself (109 S.Ct. at 2469 (footnote omitted, emphasis added)):

> Clearly, compensation received several years after the services were rendered—as it frequently is in complex civil rights litigation—is not equivalent to the same dollar amount received reasonably promptly as the legal services are performed, as would normally be the case with private billings. We agree, therefore, that an appropriate adjustment for delay in payment—whether by the application of current rather than historic hourly rates *or otherwise*—is within the contemplation of the statute.

**16.** That subject is one of the limited issues to be dealt with by this Court on remand in *Fleming.* Although this Court has not yet ruled on the matter in that case because the parties there are providing the necessary input to permit decision on all the remand questions, it appears that the record there may not have contained an express articulation of this Court's views as stated a few months later in *Lippo*—and as definitely reconfirmed here.

**17.** Although *Borowski* cited in part to *Hays* in that respect, and although *Cooter & Gell* disapproved *Hays'* special application of that concept to embrace fees on appeal from the Rule 11 sanction, nothing in *Cooter & Gell* detracts from the force of the "make whole" concept as it should properly be applied to services rendered in the *district* court rather than the Court of Appeals.

**18.** As might well have been expected from the other aspects of Campbell's presentation, the May 30 Mem. 11–14 submitted on his behalf misses the issues entirely:

1. Campbell first advances the irrelevant fact that the Rule 11 standard of lawyer conduct is essentially equivalent to a negligence test, leaping from that to the incorrect notion that *Illinois* law somehow prescribes the Rule 11 sanction, and from *that* mistaken view to the claimed unavailability of prejudgment interest on damages under Illinois law—still another irrelevancy.

2. Campbell then seeks to distinguish *Lippo* and *Jenkins* (in which, as already stated, the Supreme Court upheld the adjustment for delay in payment) because in those cases it was the *lawyers'* payment that was delayed, rather than the *clients'* as in this case. But that is a distinction without a conceptual difference, as the text here reflects.

3. Accepting arguendo "that the economic injury is sustained by the defendant who has paid attorneys' fees and does not have the use of this money" (May 30 Mem. 13, facing up to the real issue for the first time), Campbell argues that the short-term government rate should be the measure of that economic injury. To that *Lippo,* 692 F.Supp. at 839–42 provides the complete answer, because its economic approach applies to the paying client just as it does to the unpaid lawyer. And although Campbell's counsel do not acknowledge it, precisely the same economic analysis also holds good even to the extent (something that is stated by Campbell without record support) that Schal Defendants' fees may in fact be paid in part by *their* insurer.

lawyers, instead of that money's being available for all the client's other business purposes. This is not at all a matter of "prejudgment interest" on a lodestar award, but rather the determination of an appropriate sanction that *really* makes Schal Defendants whole—that puts them into the same economic position that they would have occupied had Campbell not forced the needless litigation expense on them.[19] And that in turn means that the analysis in *Lippo,* explaining why the use of the prime rate on a compounded basis is most fair from all perspectives, applies with full force here.[20] That analysis will not be repeated—it is simply adopted in this case as well.

That then leaves only the quantification of the award to be resolved. Schal Defendants' Interest Proposal on Rule 11 Sanctions Against Campbell (filed May 30) explains the methodology of their calculation. Both the premises stated there and their application are wholly acceptable—indeed they really give Campbell more than his due by employing a simple rather than a compound interest calculation on each payment of fees and expenses by Schal Defendants. This Court approves:

1. the addition of $82,750.65 to the $351,664.96 figure approved at the end of Opinion II (that takes the calculation to May 31);

2. another addition of $1,637.95 (at the per diem rate of $96.35 beginning June 1—see Schal Defendants' June 6 Mem. 2) to carry the calculation to today's date; and

3. another addition of $7,511.10 pursuant to Schal Defendants' Fifth Supplemental Schedule of Fees and Expenses (no account will be taken of the minimal delay factor on that amount).

---

**19.** That is the precise thrust of the analysis in such cases as *Jenkins,* 109 S.Ct. at 2468–69 and the corresponding decisions from our Court of Appeals.

**20.** There is one obvious exception to that identity of approach, caused by the factual difference between the unpaid lawyer and the paying client. Because the present case involves the latter situation, the delay factor is properly cal-

*Conclusion*

This Court determines that Campbell must pay Schal Defendants the aggregate sum of $443,564.66 as an appropriate sanction for Campbell's violations of Rule 11 referred to in Opinion II and this opinion. Although this Court cannot order the current *payment* of that amount by reason of the bankruptcy stay involving Campbell, it orders the immediate entry of judgment in that amount in favor of Schal Defendants jointly and severally and against Campbell.

culated from Schal Defendants' actual dates of paying the fees and expenses to their lawyers rather than in accordance with the timing assumptions referred to in *Lippo,* 692 F.Supp. at 842 (this Court has previously made the same point and applied the same calculation in *Wielgos v. Commonwealth Edison Co.,* 127 F.R.D. 135, 145 (N.D.Ill.1989)).