No. 91,305

PITTSBURG STATE UNIVERSITY/KANSAS NATIONAL EDUCATION ASSOCIATION, *Appellee,* v. KANSAS BOARD OF REGENTS/ PITTSBURG STATE UNIVERSITY and PUBLIC EMPLOYEE RELATIONS BOARD, *Appellants.*

(122 P.3d 336)

Opinion filed November 10, 2005.

*William Scott Hesse,* assistant attorney general, argued the cause and was on the briefs for appellants.

*John G. Mazurek,* of Menghini, Menghini & Mazurek, LLC., of Pittsburg, Kansas, argued the cause, and *David Schauner,* general counsel, Kansas National Education Association, of Topeka, Kansas, was with him on the briefs for appellee.

*Thomas E. Hayes,* of The Spigarelli Law Firm, of Pittsburg, Kansas, *David M. Rabban,* Professor of Law and general counsel, of American Association of Uni-

versity Professors, of Austin, Texas, *Ann D. Springer* and *Donna R. Euben,* of American Association of University Professors, of Washington, D.C., and *Robert A. Gorman,* Professor of Law, Emeritus, of Philadelphia, Pennsylvania, were on the brief for *amicus curiae* American Association of University Professors.

The opinion was delivered by

LUCKERT, J.: This case determines a narrow question of first impression: whether ownership of intellectual property rights is a subject preempted by state or federal law and, therefore, not mandatorily negotiable under the Public Employer-Employee Relations Act (PEERA), K.S.A. 75-4321, *et seq.* The issue arises from a complaint filed with the Public Employee Relations Board (PERB) by the Pittsburg State University/Kansas National Education Association (KNEA), a recognized public employee organization representing some of the faculty of Pittsburg State University (PSU). In the complaint, KNEA alleges that the Kansas Board of Regents/Pittsburg State University (KBR) committed a prohibited practice under PEERA when it did not meet and confer with KNEA before adopting a policy regarding the ownership of intellectual property. PERB determined there was no obligation to meet and confer because federal and state law preempted the subject. The district court reversed this conclusion, but the Court of Appeals agreed with PERB and reversed the district court in *Pittsburg State Univ. v. Kansas Bd. of Regents,* No. 91,305, unpublished opinion filed December 10, 2004 (*PSU/KNEA*).

We reverse the determination of the Court of Appeals, affirm the district court's holding on this issue, and conclude that neither state nor federal law preempts the subject of ownership of intellectual property from being included within the scope of a memorandum of understanding. Therefore, the subject of the ownership of intellectual property is not "preempted" within the meaning of K.S.A. 75-4330(a)(1), the applicable provision of PEERA.

Resolution of this issue does not determine the overarching question raised in this case of whether a public employer must meet and confer with a recognized public employee organization regarding ownership of intellectual property rights. In order to resolve that question, two additional issues, also of first impression, must be decided: (1) whether the subject of ownership of intellec-

tual property rights is a condition of employment and, therefore, mandatorily negotiable under PEERA and (2) whether the subject of ownership of intellectual property falls within the management prerogative exception of K.S.A. 75-4330(a)(3) and, therefore, is not mandatorily negotiable under PEERA. PERB did not resolve these issues, resting its decision solely upon the conclusion that the subject of the ownership of intellectual property was preempted from negotiation by state and federal law. We hold that the district court erred in resolving these issues without the benefit of PERB having made such findings and remand the case for additional findings.

### Factual Background

The dispute giving rise to KNEA's complaint began in 1997 when KBR proposed a policy which, if adopted, would have dictated that KBR retained ownership and control of any intellectual property created by faculty at PSU. KNEA, the recognized employee organization of certain PSU faculty, rejected this policy as unacceptable, proposed its own policy, and insisted that the parties negotiate the matter. KBR responded by stating that it was not required under PEERA to negotiate the policy because the subject of intellectual property rights was not a condition of employment, was preempted by federal and state law, and was a management prerogative.

KNEA filed its complaint with PERB on March 13, 1998. While the complaint was pending, KBR formally adopted a different intellectual property policy without meeting and conferring with KNEA. This policy gave some intellectual property rights to employees of KBR's institutions. KNEA amended its complaint to allege that KBR's unilateral adoption of this policy was also a prohibited practice.

### Overview of PEERA

In order to discuss PERB's resolution of the complaint and KNEA's arguments regarding the PERB's and lower courts' decisions, it is necessary to first examine those statutory provisions of PEERA which are relevant to KNEA's complaint.

The essence of the complaint is that KBR had an obligation to meet and confer before adopting a policy regarding ownership of intellectual property. PEERA is a hybrid labor relations act which falls "somewhere between a pure 'meet and confer' act and a classic 'collective bargaining' act." *State Dept. of Administration v. Public Employees Relations Bd.*, 257 Kan. 275, 281-82, 894 P.2d 777 (1995). PEERA imposes on public employers and recognized public employee organizations the obligation "to enter into discussions with affirmative willingness to resolve grievances and disputes relating to conditions of employment, acting within the framework of law." K.S.A. 75-4321(b); *Kansas Bd. of Regents v. Pittsburg State Univ. Chap. of K-NEA*, 233 Kan. 801, 804-05, 667 P.2d 306 (1983) (*Pittsburg State*).

More specifically, under PEERA, public employers are required to "meet and confer in good faith" with recognized public employee organizations "in the determination of conditions of employment." K.S.A. 75-4327(b).

A nonexclusive list of "conditions of employment"—the matters about which there must be negotiation—is contained in K.S.A. 75-4322(t): The list includes "salaries, wages, hours of work, vacation allowances, sick and injury leave, number of holidays, retirement benefits, insurance benefits, prepaid legal service benefits, wearing apparel, premium pay for overtime, shift differential pay, jury duty and grievance procedures." In *Pittsburg State*, 233 Kan. 801, a case relating to a previous PEERA dispute between the parties in this case, this court concluded that the legislature did not intend that the "laundry list of conditions of employment as set forth in K.S.A. 75-4322(t) be viewed narrowly with the object of limiting and restricting the subjects for discussion between employer and employee. To the contrary, the legislature targets all subjects *relating to* conditions of employment." 233 Kan. at 819. The court examined several subjects to see if the "item [was] significantly related to an express condition of employment" of PSU faculty. 233 Kan. at 816. The court held that budget inputs for salary generation and allocation; out of state travel funds; the criteria, procedures, or methods by which candidates for promotion are identified; the criteria, procedures, or methods for screening candidates for summer

employment; tenure; retrenchment procedures; and personnel files were significantly related to one or more of the statutorily listed conditions of employment and were mandatorily negotiable. 233 Kan. at 826-28.

If a subject is a condition of employment, then the public employer must meet with a recognized public employee organization and confer in good faith. K.S.A. 75-4327. To "meet and confer in good faith" requires the free exchange of "information, opinions and proposals to endeavor to reach agreement on conditions of employment." K.S.A. 75-4322(m). The refusal to meet and confer regarding conditions of employment is a "prohibited practice." K.S.A. 75-4333(b)(5).

Additionally, K.S.A. 75-4327, the statute which imposes the obligation to meet and confer, provides that a public employer "may enter into a memorandum of agreement" with a recognized employee organization. K.S.A. 75-4327(b). The scope of such a memorandum of agreement is defined in K.S.A. 75-4330 and "may extend to all matters relating to conditions of employment, except proposals relating to (1) any subject preempted by federal or state law . . .; (2) public employee rights defined in K.S.A. 75-4324 . . .; [or] (3) public employer rights defined in K.S.A. 75-4326 . . . ." K.S.A. 75-4330(a); see K.S.A. 75-4322(n) (defining "memorandum of agreement"). The first exception, which we will refer to as the preemption exception, is the primary focus of this decision. Beyond stating the exception, PEERA provides little guidance as to its application; the term "preempted" is not defined. The second exception, relating to public employee rights, is not implicated by any arguments made by the parties. The third exception, relating to the rights of public employers, is asserted by KBR as being applicable to the subject of ownership of intellectual property. The exception is sometimes referred to as management rights or managerial prerogatives, see *Pittsburg State*, 233 Kan. at 816, 819. K.S.A. 75-4326 defines this "managerial" exception.

Summarizing these provisions in the context of this case, these provisions mean that KBR, a public employer, is required to meet and confer with KNEA, a recognized public employee organization, only if ownership of intellectual property is a condition of

employment. If the ownership of intellectual property is a condition of employment, the subject may be included in a memorandum of agreement if no exception applies, *i.e.*, if ownership of intellectual property is not preempted by state or federal law, is not a right of a public employee, or is not a right of a public employer.

From the time KBR proposed the intellectual property policy and KNEA objected thereto, KBR has argued that ownership of intellectual property is not a condition of employment and that, even if it is, it could not be included as a subject in a memorandum of agreement because the subject is preempted by statute and falls within the rights of the public employer. Consequently, according to KBR it had no obligation to meet and confer with KNEA and, therefore, it did not commit a prohibited practice.

## The Hearing Officer's Initial Order

The hearing officer agreed with KBR, concluding that KBR did not commit a prohibited practice. That determination was based upon a finding that the subject of ownership of intellectual property was preempted by state and federal law. In reaching this determination, the hearing officer, after conducting a formal hearing, made the following findings of fact:

"1. The Kansas Board of Regents is a constitutional agency of the state of Kansas with the authority to supervise and control institutions of higher education within the state.

"2. Pittsburg State University is a member institution of the Kansas State Board of Regents.

"3. Kansas Board of Regents/Pittsburg State University is the employer of college professors at Pittsburg State University.

"4. Professors at Pittsburg State University have three major responsibilities: teaching, scholarship, and creative endeavor and service.

"5. Pittsburg State University provides its professors with office space, equipment, research facilities, supplies, and secretarial help.

"6. Among other responsibilities, Pittsburg State University professors conduct research, write scholarly articles, publish scholarly articles, create songs or artwork and other forms of intellectual property.

"7. Professors who publish scholarly works receive better performance evaluations and receive a higher level of compensation from the employer.

"8. Professors' promotions are based on production of books and articles and on presentation of information at conferences."

Although the hearing officer's findings of fact seem to relate to whether intellectual property rights are a condition of employment, he declined to decide that question and instead moved forward "on the assumption that the subject of intellectual property rights intimately and directly affects the work and welfare of the public employees at issue here." The hearing officer also declined to decide the application of the exception regarding the public employer's rights, which he labeled as "inherent managerial prerogatives." Instead, the hearing officer concluded: "[I]t is necessary to determine first whether any constitutional or statutory provisions relating to the subject sought to be negotiated would remove it from the area of mandatory negotiability" and then found that both federal and state laws were preemptive. Regarding federal law, the hearing officer focused solely upon copyright law and found that university employees

"are expected to produce intellectual property in the scope of their employment. Intellectual property thus created falls under the work for hire doctrine, and by operation of federal law, belongs to the employer, Kansas Board of Regents/Pittsburg State University. The subject of intellectual property rights is thus preempted by operation of federal law."

The hearing officer noted, although federal copyright law expressly provides the ownership of intellectual property rights could be changed by agreement of the parties, that "does not mean that the subject is not preempted, merely that the preemptive result may be changed."

As an additional ground for finding no prohibited practice by KBR, the hearing officer found that state law, specifically K.S.A. 76-718, mandates that any funds received by a state educational institution or its employees from intellectual property be dedicated solely to the use of that institution. Therefore, the hearing officer concluded that the disposition of funds received from intellectual

property was "fixed by statute" and not a mandatorily negotiable condition of employment pursuant to K.S.A. 75-4322(t).

## PERB's Final Order

On review, PERB upheld the hearing officer's initial order and decision. One member dissented. The majority did not expand upon the analysis of the hearing officer, adopting the hearing officer's order "without modification." The dissenting member stated that he did not agree that either the federal or state statute "preempts all subjects that might be related to the subject of intellectual property."

## The District Court's Decision

The district court reversed. First, the district court stated: "By applying the Presiding Officer's findings of fact to the precedential law of *Pittsburg State* [233 Kan. 801], this Court concludes that intellectual property constitutes a condition of employment." Second, the district court concluded that the requirement to "meet and confer on the subject of intellectual property does not violate K.S.A. 75-4326 or in anyway impermissibly effect any so called 'inherent managerial policy.'" Third, the district court concluded the subject was not preempted. Discussing the state statute which the hearing officer had found to be preemptive, K.S.A. 76-718, the district court concluded it was "inapposite." Regarding federal law, the district court concluded: (a) "The gambit of intellectual property is not, *in toto*, preempted by federal law" and (b) the hearing officer relied solely upon the Copyright Act of 1976, 17 U.S.C. § 101 *et seq.* (2000), but that Act does not cover patents or trademarks. The district court concluded that KBR committed a prohibited practice when it refused to negotiate.

## The Court of Appeals' Decision

In an unpublished decision, the Court of Appeals reversed the district court and reinstated the decision of PERB, holding that "requiring mandatory negotiations concerning intellectual property is preempted by federal copyright law." *PSU/KNEA*, slip op. at 6. The rationale for this decision will be discussed in more detail. The Court of Appeals did not address any other portions of the district

court decision, including the discussion of whether K.S.A. 76-718 preempted the subject.

This court granted KNEA's petition for review.

*Standard of Review*

Judicial review of a PERB decision on a prohibited practice complaint is governed by the Kansas Act for Judicial Review and Civil Enforcement of Agency Actions (KJRA), K.S.A. 77-601 *et seq*. See K.S.A. 75-4334(c); *State Dept. of Administration*, 257 Kan. at 281.

The KJRA limits appellate review of an agency action by providing, in relevant part:

"(c) The court shall grant relief only if it determines any one or more of the following:

. . . .

"(3) the agency has not decided an issue requiring resolution;

"(4) the agency has erroneously interpreted or applied the law;

. . . .

"(7) the agency action is based on a determination of fact, made or implied by the agency, that is not supported by evidence that is substantial when viewed in light of the record as a whole, which includes the agency record for judicial review, supplemented by any additional evidence received by the court under this act; or

"(8) the agency action is otherwise unreasonable, arbitrary or capricious." K.S.A. 77-621.

The application of these provisions to PERB orders was discussed in *Pittsburg State*:

"Neither the district court nor this court can weigh conflicts in the evidence and substitute its judgment for that of the Board. [Citations omitted.] . . . .

"The PERB orders in this case are partly factual determinations, which are subject to the review stated above, and partly determinations of law, which involve a different standard of review. . . . 'In reviewing questions of law, the trial court may substitute its judgment for that of the agency, although ordinarily the court will give deference to the agency's interpretation of the law. [Citation omitted.]' " 233 Kan. at 808-09.

The principal issue raised for our review is the determination that the subject of ownership of intellectual property was preempted by state or federal laws. PERB's operative interpretation of the meaning of PEERA's preemption exception is entitled to deference. However, as KNEA correctly points out, PERB is not entitled to deference in its interpretation of other state or federal

statutes, including those regarding intellectual property. See *State Dept. of Administration*, 257 Kan. at 281.

These principles regarding judicial review apply equally to the district court's, the Court of Appeals' and our review of the PERB decision. That review requires initial analysis of: (1) interpretation of the preemption exception; (2) application of federal copyright law to this exception; (3) application of other forms of federal intellectual property law to the exception; and (4) application of K.S.A. 76-718 to the exception.

### Interpretation of the Preemption Exception

The Court of Appeals' and PERB's interpretations of the preemption exception were quite different. The Court of Appeals applied the term "preempt" in the traditional sense of federal preemption of state law, noting: "As a general rule, federal copyright law preempts state law claims which fall within its general scope. See 17 U.S.C. § 301(a) (2000)." *PSU/KNEA*, slip op. at 5. The Court of Appeals then utilized a two-part test for determining whether a state statute is preempted by federal copyright law: "To determine whether a statute is preempted by federal copyright law, we look at two factors. First, whether the statute falls within the subject matter of the copyright law and, if so, whether the statute conflicts with the federal law. [Citations omitted.]" *PSU/KNEA*, slip op. at 5.

However, the issue is not whether federal legislation occupies the field to the exclusion of a state statute. Such an interpretation is inconsistent with the language and purpose of PEERA. K.S.A. 75-4330 speaks in terms of whether a subject of a memorandum of agreement is preempted, not whether a state statute is preempted by federal law. In other words, the appropriate inquiry is whether federal law prevents the parties from negotiating regarding ownership of intellectual property rights and entering into a memorandum of agreement which includes that subject. If the freedom to contract remains, the subject of ownership of intellectual property rights is not preempted. See *Wright v. Board of Educ. of City of East Orange*, 99 N.J. 112, 119, 491 A.2d 644 (1985) (mere existence of statute or regulation relating to given term or condition

of employment does not automatically preclude negotiation; negotiation is preempted only if the statute or regulation speaks in the imperative and leaves nothing to the discretion of the public employer).

The Court of Appeals recognized that federal copyright law allows the parties to contract regarding ownership. Despite this, the Court of Appeals stated that federal copyright law would conflict with a requirement that the parties negotiate regarding the subject of ownership of intellectual property. Similarly, PERB, although it did not focus on the traditional preemption of federal law over state law or claims, concluded that negotiation cannot be required because federal law establishes a preemptive ownership right.

Both the Court of Appeals' conclusion and PERB's analysis, which erroneously focus upon only one form of intellectual property (copyright), are contrary to the language and purposes of PEERA and are incorrect applications of federal copyright law. To explain, it is necessary to first examine some general principles of copyright law and the work-for-hire doctrine.

## Copyright Law

Under the Copyright Act of 1976, copyright ownership "vests initially in the author or authors of the work." 17 U.S.C. § 201(a) (2000). However, where a work is made for hire: "[T]he employer or other person for whom the work was prepared is considered the author . . . and, *unless the parties have expressly agreed otherwise in a written instrument signed by them,* owns all of the rights comprised in the copyright." (Emphasis added.) 17 U.S.C. § 201(b) (2000). This is known as the work-for-hire doctrine.

The hearing officer stated that 17 U.S.C. § 201(b) created a "preemptive result." In reaching this conclusion, the hearing officer looked to a dictionary definition of "preempt" as meaning: " 'to gain possession of by prior right or opportunity.' The American Heritage Dictionary, p. 1032 (1976)." Applying this definition, he concluded: "The public employer gains possession of intellectual property rights by prior right or opportunity, that is, by operation of the federal work for hire doctrine." However, 17 U.S.C. § 201(b) does not create a right similar to a shareholder's privilege or pre-

emptive right to purchase newly issued stock — the definition imposed by the hearing officer. Rather, 17 U.S.C. § 201(b) creates a *presumptive* result. See generally *Easter Seal Soc. v. Playboy Enterprises*, 815 F.2d 323 (5th Cir. 1987) (discussing historical evolution of presumptions in work-for-hire context). As Washburn Law Professor James B. Wadley and coauthor JoLynn Brown explain:

"This provision [17 U.S.C. § 201(b)] suggests three things worthy of note. First, it is apparent that the work-for-hire doctrine embodies only a presumption regarding the ownership of copyright rights and, as such, particularly allows the parties an opportunity to conform the law to their expectations, simply by agreeing to a particular copyright ownership outcome. Second, it is apparent that the law does not feel particularly strongly about the presumption since the ownership provision vesting the copyright in the employer operates more as a default provision, operating unless the parties agree otherwise. Finally, the opportunity to avoid the impact of the presumption arises only when the presumption itself is invoked. That is, even if the works at issue are produced within an employment relationship but are not sufficiently considered the objects of that relationship to be considered works for hire, the employee should not bear the burden of requiring a writing to preserve his or her copyright claim to such works." Wadley & Brown, *Working Between the Lines of Reid: Teachers, Copyrights, Work-For-Hire and a New Washburn University Policy*, 38 Washburn L.J. 385, 421 (1999).

As this commentary indicates, the plain language of the statute reflects that Congress clearly contemplated that parties could negotiate ownership of a copyright. In other words, 17 U.S.C. § 201(b) allows the subject of copyright ownership to be covered within a memorandum of understanding or any other written agreement.

At most, 17 U.S.C. § 201(b) gives the bargaining power to KBR in those situations where the work-for-hire doctrine applies to ownership of a copyright. However, that does not foreclose negotiation regarding ownership. In this respect, we disagree with the Court of Appeals' determination that to require intellectual property rights issues to be mandatorily negotiable would conflict with federal copyright law. The Court of Appeals reasoned as follows:

"The copyright law clearly *allows* an employer in a 'work for hire' situation to negotiate with employees concerning the rights to intellectual property, but the federal law does not *require* an 'author' to negotiate away the rights. Interpreting the Kansas statute to *require* a [KBR] university to negotiate away rights to cop-

yrighted material would conflict with the federal law provisions which state in a work-for-hire situation, the employer is considered to be the author and owner of the material." *PSU/KNEA*, slip op. at 5-6.

The Court of Appeals incorrectly concluded that requiring KBR to "meet and confer" is the equivalent of requiring KBR to "negotiate away rights" to copyrighted materials. See *PSU/KNEA*, slip op. at 5. In fact, an employer is never required to "negotiate away rights" under PEERA:

"PEERA imposes no obligation on the employer to agree to the employees' demands. However, PEERA *prevents* public employers that come under its provisions from simply acting unilaterally in determining conditions of employment. Although the governing body of the public employer ultimately can dictate any mandatory subject of bargaining, it can do so *only* after the public employer has negotiated in good faith, reached impasse in good faith, and participated in impasse-resolution procedures such as fact-finding and mediation. See K.S.A. 75-4332." *State Dept. of Administration*, 257 Kan. at 287.

Furthermore, rather than negotiating away rights, KBR and KNEA would be negotiating consistent with the parties' expectations. This may mean that KBR will maintain ownership rights. However, it may also be that KBR will determine it does not always have ownership rights or that it is willing to contractually grant those rights to the faculty. For example, the policy finally adopted by KBR did give some intellectual property rights to employees of KBR's institutions.

17 U.S.C. § 201(b) does not prevent the parties from entering into a memorandum of agreement regarding the subject of intellectual property rights; it contemplates that there can be negotiation of the subject.

### *Work-for-hire Doctrine and a Teacher Exception*

Additionally, KNEA argues that both PERB and the Court of Appeals erred in assuming that the work-for-hire doctrine applies to any and all intellectual property created by PSU faculty simply because those faculty are employees of PSU. Works can be produced within an employment relationship which "are not sufficiently considered the objects of that relationship to be considered works for hire." Wadley & Brown, 38 Washburn L.J. at 421.

KNEA in its supplemental brief extends this argument and contends that *all* faculty works are excluded from the work-for-hire doctrine under a teacher exception. Therefore, according to the KNEA, federal law would give ownership of the copyright to the teachers.

The American Association of University Professors (AAUP) filed an *amicus* brief generally supporting the position of KNEA and arguing that faculty scholarly works are not considered works for hire under federal copyright law. The AAUP also points out that its own policy, academic practice, and preservation of academic freedom require that professors own the copyrights to their own works. However, even the AAUP policy recognizes that some academic works properly fall within the category of works for hire.

A teacher exception to the work-for-hire doctrine has been discussed by courts. See *Williams v. Weisser*, 273 Cal. App. 2d 726, 78 Cal. Rptr. 542 (1969). However, a teacher exception to the work-for-hire doctrine was not incorporated into the Copyright Act when it was revised in 1976. See 17 U.S.C. § 201. This caused confusion as to whether the teacher exception continued to exist. The Seventh Circuit Court of Appeals decided two cases which seemed to continue the exception on the basis of custom: *Hays v. Sony Corp. of America*, 847 F.2d 412 (7th Cir. 1988), *abrogated on other grounds Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 406-09, 110 L. Ed. 2d 359, 110 S. Ct. 2447 (1990), and *Weinstein v. University of Illinois*, 811 F.2d 1091 (7th Cir. 1987).

KBR argues that because both *Hays* and *Weinstein* were decided prior to the United States Supreme Court decision in *Community for Creative Non-Violence v. Reid*, 490 U.S. 730, 104 L. Ed. 2d 811, 109 S. Ct. 2166 (1989), they "have dubious precedential value." *Reid* is the benchmark case interpreting the work-for-hire provisions of the 1976 Copyright Act. In *Reid*, the United States Supreme Court considered whether the work of an independent contractor who created a sculpture was a work for hire under the Copyright Act. The Court noted that 17 U.S.C. § 101 (2000) defines a "work made for hire" as:

"(1) a work prepared by an employee within the scope of his or her employment; or

"(2) a work specially ordered or commissioned for use as a contribution to a collective work, as a part of a motion picture or other audiovisual work, as a translation, as a supplementary work, as a compilation, as an instructional text, as a test, as answer material for a test, or as an atlas, if the parties expressly agree in a written instrument signed by them that the work shall be considered a work made for hire."

The Court interpreted this definition as follows: "The structure of § 101 indicates that a work for hire can arise through one of two mutually exclusive means, one for employees and one for independent contractors, and . . . the classification of a particular hired party should be made with reference to agency law." *Reid,* 490 U.S. at 742-43. Because Reid was an independent contractor, 17 U.S.C. § 101 "work made for hire" (2) applied, and, in order for the work to be considered work for hire, his work had to fall within one of the nine enumerated categories of 17 U.S.C. § 101 "work made for hire" (2) and there had to be an express writing stating that the work was one made for hire. Because these requirements were not met, the Court ruled that Reid, rather than his employer, owned the copyright to his work. 490 U.S. at 753.

With regard to works prepared by employees, the *Reid* Court noted that the term "scope of employment," as used in 17 U.S.C. § 101 "work made for hire" (1), is a widely used term of art in agency law. 490 U.S. at 740. Since *Reid,* courts have relied on the Restatement (Second) of Agency § 228 (1957) to determine whether a work is prepared in the scope of employment. See, *e.g., Avtec Systems, Inc. v. Peiffer,* 21 F.3d 568, 571 (4th Cir. 1994). Under the Restatement (Second) of Agency § 228(1), an employee's conduct falls within the scope of employment "only if: (a) it is of the kind he is employed to perform; (b) it occurs substantially within the authorized time and space limits; [and] (c) it is actuated, at least in part, by a purpose to serve the master." An employee's conduct does not fall within the scope of employment if "it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master." Restatement (Second) of Agency § 228(2).

KBR cites several more recent decisions which applied *Reid* and the Restatement test to reach a different conclusion than *Hays* and

*Weinstein.* For example, in *Shaul v. Cherry Valley-Springfield Cent. School,* 363 F.3d 177 (2d Cir. 2004), the Second Circuit Court of Appeals held that a high school teacher's preparation of tests, quizzes, and homework problems fell within the scope of his employment; thus, the school district rather than the teacher owned the copyright to those materials under the work-for-hire doctrine of the 1976 Copyright Act. 363 F.3d at 186. The court rejected the teacher's attempt to invoke an academic exception to the work-for-hire doctrine based on *Weinstein,* distinguishing that case on the ground that the school district did not have a formal written policy like the one in *Weinstein.* The court also noted that the academic tradition of granting university professors ownership of their scholarly works "is not pertinent to teaching materials that were never explicitly prepared for publication . . . as opposed to published articles by university professors." 363 F.3d at 186.

In two other cases, courts applied the rules stated in *Reid* without discussing any possible teacher or academic exception: *Vanderhurst v. Colorado Mountain College Dist.,* 16 F. Supp. 2d 1297 (D. Colo. 1998) (professor's outlines were works for hire where outlines were incidental to his employment and a method of carrying out employment's objectives, even though he prepared them on his own time and with his own materials); *Genzmer v. Public Health Trust of Miami-Dade,* 219 F. Supp. 2d 1275 (S.D. Fla. 2002) (computer program written by postgraduate physician as assigned research project during his fellowship at county hospital was work for hire; therefore, copyright was owned by hospital).

Law review articles disagree on the current state of law with regard to this issue. Some commentators have expressed doubt that a teacher exception continued to exist after the 1976 Copyright Act. See Packard, *Copyright or Copy Wrong: An Analysis of University Claims to Faculty Work,* 7 Comm. L. & Pol'y 275, 314 (2002). Others believe the 1976 Copyright Act did not disturb the teacher exception to the work-for-hire doctrine. See Lape, *Ownership of Copyrightable Works of University Professors: The Interplay Between the Copyright Act and University Copyright Policies,* 37 Vill. L. Rev. 223, 238-46, 268-69 (1992). Yet others believe a teacher exception is no longer necessary because, under *Reid,* most

teachers' works will fall outside the work-for-hire doctrine. See Wadley & Brown, 38 Washburn L.J. at 432 ("[S]ince the Court's decision in the *Reid* case provides the necessary reasoning to support the proposition that some academic works created during employment are outside the work-for-hire doctrine, it is questionable whether an explicit 'teacher exception' for academic works is needed.").

While it is far from clear that there is an absolute teacher exception to the work-for-hire doctrine as argued by KNEA, KBR's argument on this point goes too far in the opposite direction. According to KBR, PERB's factual findings show that PSU faculty is employed under work-for-hire circumstances and all intellectual properties created by the faculty in the form of scholarly works or creative endeavors are works for hire. The logical next step is to conclude that KBR owns all rights to any intellectual property created by PSU faculty. That is too big a leap. Even if PSU faculty are employees of KBR, that does not end the analysis for purposes of determining whether the works they create are works for hire. As described above, whether any particular creative work of a faculty member constitutes work for hire will depend on whether the work meets the Restatement test, *i.e.*, whether it is the type of work the faculty member was hired to create; whether it was created substantially within the time and space limits of the job; and whether it was motivated by a purpose to serve the university employer. See Restatement (Second) of Agency § 228. This will necessarily involve not just a case-by-case evaluation, but potentially a task-by-task evaluation. See Wadley & Brown, 38 Washburn L.J. at 404.

Accordingly, the Court of Appeals, the hearing officer, and PERB erred in assuming that the work-for-hire doctrine would apply to any intellectual property created by PSU faculty simply because those faculty are employees of PSU.

## Intellectual Property Other Than Copyright

KNEA also argues that the Court of Appeals' decision failed to address other kinds of intellectual property including patents and trademarks. KNEA points out that the Patent Act, 35 U.S.C. § 1 *et seq.* (2000), does not include the same kind of work-for-hire

provisions as does federal copyright law. Rather, absent a written assignment of rights pursuant to 35 U.S.C. § 261 (2000), patent ownership issues are resolved by common law.

*United States v. Dubilier Condenser Corp.*, 289 U.S. 178, 187-89, 77 L. Ed. 1114, 53 S. Ct. 554 (1933), stated the rule for when an employer owns the patent rights to an employee's invention:

"One employed to make an invention, who succeeds, during his term of service, in accomplishing that task, is bound to assign to his employer any patent obtained. The reason is that he has only produced that which he was employed to invent. His invention is the precise subject of the contract of employment. A term of the agreement necessarily is that what he is paid to produce belongs to his paymaster. [Citation omitted.] On the other hand, if the employment be general, albeit it covers a field of labor and effort in the performance of which the employee conceived the invention for which he obtained a patent, the contract is not so broadly construed as to require an assignment of the patent. [Citations omitted.]"

*Dubilier* has been interpreted to mean that an employee must be specifically hired or directed to create an invention before the employer may claim ownership of patent rights. See *Teets v. Chromalloy Gas Turbine Corp.*, 83 F.3d 403, 407 (Fed. Cir. 1996).

In circumstances where the employee was not specifically hired or directed to create an invention, but he or she does so during his or her hours of employment and while working with his or her employer's materials and equipment, the employer may obtain what is known as a "shop right." *Dubilier*, 289 U.S. at 188. A shop right allows the employer to use the employee's invention without liability for infringement but also without obtaining ownership of it. *Dubilier*, 289 U.S. at 188-89; *Teets*, 83 F.3d at 407.

Again, as with federal copyright law, federal law regarding patent ownership does not prevent the parties from entering into a memorandum of agreement regarding the subject of patent ownership. To the contrary, the Patent Act specifically provides that the parties may assign patent ownership rights. 35 U.S.C. § 261. Thus, federal law does not preempt any kind of intellectual property rights from becoming the subject of a memorandum of agreement under PEERA.

### State Law Preemption

In addition to finding that the subject of intellectual property rights was preempted by federal copyright law, the hearing officer

in this case also found that, under state law, the disposition of funds received from intellectual property belonging to the state's educational institutions was fixed by state statute and was therefore not a condition of employment. In support, the hearing officer cited K.S.A. 76-718. K.S.A. 76-718 provides:

"All moneys received from the rent or sale of property, interest on endowment funds, moneys from the federal government, or from any other source by state educational institutions or their employees under the law or the order of the board of regents or by the state *for such state educational institutions* are hereby dedicated to the use of the state educational institution collecting or for which the same are collected." (Emphasis added.)

The hearing officer concluded that, by virtue of the operation of this provision, disposition of funds received from intellectual property was "fixed by statute" and was not a mandatorily negotiable condition of employment pursuant to K.S.A. 75-4322(t).

The Court of Appeals did not discuss this issue. The district court rejected the hearing officer's conclusion that K.S.A. 76-718 controls the disposition of funds received from intellectual property. The district court stated:

"K.S.A. 76-718 cannot be read in such a broad manner. This statutory provision maintains that certain *monies* — not intellectual property rights — received by either: (1) Pittsburg State University, (2) any Pittsburg State University employee, or (3) the State of Kansas *for* Pittsburg State University be dedicated to the use of Pittsburg State University and not, say, the University of Kansas, Kansas State University, or Wichita State University. K.S.A. 76-718 is awkwardly out of place and inapposite."

We agree with the district court. K.S.A. 76-718 only provides that monies received for a particular state education institution are dedicated to that specific educational institution. The statute does not govern whether monies received by an educational institution's employees for the sale of intellectual property belong to the educational institution or the employee.

Accordingly, PERB erroneously interpreted the law in concluding that, under state law, the disposition of funds received from intellectual property was fixed by state statute and was therefore not a condition of employment.

## Conclusion Regarding Preemption

Neither state nor federal law preempts the subject of ownership of intellectual property from being the subject of negotiations between a public employer and a recognized public employee organization or being included within the scope of a memorandum of understanding. Therefore, the subject of the ownership of intellectual property is not preempted within the meaning of K.S.A. 75-4330(a)(1), the applicable provision of PEERA.

## Condition of Employment

The next logical question is whether intellectual property rights are a condition of employment under PEERA. The Court of Appeals did not address this issue, although the parties discussed it in their briefs. This court is free to consider issues which were presented to but not addressed by the Court of Appeals pursuant to Supreme Court Rule 8.03(h)(3) (2004 Kan. Ct. R. Annot. 58). *Alires v. McGehee*, 277 Kan. 398, 404-05, 85 P.3d 1191 (2004).

According to the KNEA, both PERB and the district court agreed that intellectual property rights are a condition of employment under PEERA. This is not an accurate reflection of PERB's ruling. As noted earlier, PERB did not make the determination. Rather, PERB adopted the hearing officer's opinion which stated: "Based upon the facts set forth above, this determination will proceed *on the assumption* that the subject of intellectual property rights intimately and directly affects the work and welfare of the public employees at issue here." (Emphasis added.) In a footnote, the hearing officer commented that KBR had made a compelling argument to the contrary based upon the professors' receiving full compensation for any intellectual property they created as part of the normal, expected course of their employment.

The district court, on the other hand, did address the question and ruled that intellectual property rights were a condition of employment. In doing so, the district court applied the test approved in *Pittsburg State* of whether the item was *"significantly related* to an express condition of employment." See 233 Kan. at 816. The district court accepted the hearing officer's findings of fact adopted without modification as PERB's final agency order, but ruled that

PERB had reached an erroneous legal conclusion when applying the law to those facts.

In its brief before the Court of Appeals, KBR argued that the district court overstepped and substituted its own judgment for that of PERB in ruling that ownership of intellectual property rights was a condition of employment under PEERA. KNEA responds that the district court did not substitute its judgment or reweigh facts; rather, the court accepted those findings of fact but drew a different legal conclusion from those facts. Furthermore, the district court concluded that the provisions of K.S.A. 75-4326 regarding public employer rights did not apply, an issue not reached by PERB.

The facts of *Transam Trucking, Inc. v. Kansas Dept. of Human Resources*, 30 Kan. App. 2d 1117, 54 P.3d 527 (2002), are instructive. In that case, an employer sought review of an agency decision awarding unemployment benefits to the claimant after the employer had fired the claimant for his involvement in several accidents. The agency concluded that the claimant's involvement in the accidents did not amount to "misconduct," which would have disqualified him for unemployment benefits. On appeal, the district court found that the agency had applied an outdated legal definition of misconduct from an earlier version of the applicable statute. The district court then found that the claimant's accidents did constitute misconduct under the current statutory definition.

The Court of Appeals reversed, holding:

"The district court overstepped. A district court reviewing the Board's decisions may grant relief only on the grounds set forth in K.S.A. 77-621(c). [Citation omitted.] These grounds include the agency's erroneous interpretation or application of the law. K.S.A. 77-621(c)(4).

"Here, the district court was within its authority to recognize the agency had erroneously applied K.S.A. 44-706(b)(1) (Furse 1993) and to grant relief, but it should have remanded for further Board findings under the proper standard. Neither the district court nor this court has de novo review of this matter. [Citation omitted.] The district court was not free to substitute its own findings for those of the Board or referee." 30 Kan. App. 2d at 1123-24.

Similarly, in this case, the district court was authorized to determine whether PERB had erroneously interpreted and applied

the law to the facts of the case pursuant to K.S.A. 77-621(c)(4). As the hearing officer's decision notes, not all findings regarding facts about conditions of employment were made and the hearing officer did not reach the step of employing the balancing test recognized in *Pittsburg State* which requires applying the law to the facts. See 233 Kan. at 816 ("PERB, in order to determine whether a particular item is or is not mandatorily negotiable, has developed and employs a balancing test: If an item is *significantly related* to an express condition of employment, and if negotiating the item will not unduly interfere with management rights reserved to the employer by law, then the item is mandatorily negotiable."). The district court should have remanded the case to PERB for additional findings regarding whether ownership of intellectual property is a condition of employment and whether the exception of K.S.A. 75-4330(a)(3) (public employer rights as defined in K.S.A. 75-4326) applies. See K.S.A. 77-621(c)(3) (court may grant relief where "the agency has not decided an issue requiring resolution"). We, therefore, reverse the district court regarding its findings on these issues and remand to the district court with directions to remand to PERB for further proceedings.

Judgment of the Court of Appeals reversing the district court is reversed. Judgment of the district court is affirmed in part, reversed in part, and remanded with directions.

LARSON, S.J., assigned.