Jose **MOLINELLI–FREYTES,** et al, Plaintiffs,

v.

**UNIVERSITY OF PUERTO RICO,** et al, Defendants.

Civil No. 09–1655(DRD).

United States District Court, D. Puerto Rico.

Dec. 15, 2010.

---

Christina M. Beauchamp–Richards, Guaynabo, PR, Tamara Sosa–Pascual, Pascual, Moran & Associates, San Juan, PR, for Plaintiffs.

Jorge E. Perez–Diaz, Jason R. Aguilo–Suro, Maria Dolores Trelles–Hernandez, Pietrantoni Mendez & Alvarez, San Juan, PR, for Defendants.

## OPINION AND ORDER

DANIEL R. DOMINGUEZ, District Judge.

## I. PROCEDURAL HISTORY

The instant case is a copyright infringement action brought pursuant to the Court's exercise of federal question subject matter jurisdiction over claims arising under the Copyright Act of 1976 (the "1976 Act"), as amended, 17 U.S.C. § 101 *et seq.* Plaintiffs aver that they created an original manuscript ("the Proposal") during non-working hours while employed as professors at Defendant University of Puerto Rico ("UPR"). Plaintiffs also allege that Defendant Puerto Rico Council on Higher Education ("PRCHE") knowingly approved implementation of an unauthorized modified version of the Proposal and that UPR subsequently began to implement a Masters and Doctorate Program based upon the Proposal in violation of Plaintiffs' duly registered copyright.

On July 30, 2009, Plaintiffs filed a *Motion Requesting Preliminary Injunction* (Docket No. 7) and on August 31, 2009, Defendants filed an *Opposition to Preliminary Injunction Request* (Docket No. 33). Subsequently, the Court held seven days of hearings regarding the injunction request (Docket Nos. 158–164) and, ultimately, denied the preliminary injunction (Docket No. 182), noting in that order that a fundamental question of law remained unanswered as to the existence of a "teacher exception" to the work for hire defense

raised by Defendants in the instant case. The Court then ordered further briefing of the matter in order to allow it to properly narrow the issues in the instant case for trial.

Thus, on May 15, 2010, Plaintiffs filed their brief regarding the "teacher exception" (Docket No. 196). Therein, Plaintiffs provided the Court with a thorough account of the history relating to the creation of the exception under the 1909 Copyright Act (the "1909 Act"), which was later replaced by the 1976 Act. Plaintiffs then summarized relevant jurisprudence drafted after the enactment of the 1976 Act, noting particularly that, in the dicta of one opinion, Circuit Judge Posner outlined several policy reasons for retaining the "teacher exception" under the current copyright law. Further, Plaintiffs argued that the interests of academic freedom and professors' privacy and publicity rights support a finding that the "teacher exception" continues to exist in present day copyright law and emphasized that "commercialization and profit potential" move UPR to exploit the Proposal, rather than protection of the copyrighted material. Finally, Plaintiffs pointed to UPR's Institutional Policy on Intellectual Property as evidence that the university itself has recognized the common law "teacher exception" in formulating its policies. Plaintiffs thus hint that, even if the law has shifted away from the "teacher exception," Defendant UPR's policy is to grant ownership of materials traditionally contained within that exception to professors.

On June 25, 2010, Defendants filed their brief regarding the potential continued application of the "teacher exception" to the work for hire defense that they raised (Docket Nos. 208–209). Therein, Defendants also discussed the early history of

the "teacher exception" under the 1909 Act, outlining the fact-patterns and holdings of the two early "teacher exception" cases, *Sherrill v. Grieves,* 57 Wash. L.Rep. 286, 20 C.O. Bull. 675 (D.C.1929), and *Williams v. Weisser,* 153 U.S.P.Q. 866 (Cal.App. Dep't Super. Ct.1967), *aff'd* 273 Cal.App.2d 726, 78 Cal.Rptr. 542 (1969). Defendants also discussed the case of *Manasa v. Univ. of Miami,* 320 So.2d 467 (Dist.Ct.App.Fl.1975)(per curiam), which they assert establishes that the "teacher exception" did not constitute a blanket rule providing professors with ownership of all documents and items created even prior to the enactment of the 1976 Act. Defendants thus argued that the teacher exception was limited to certain professorial output. Further, Defendants averred that the changes in the work-for-hire doctrine ushered in by enactment of the 1976 Act, combined with the preemption of common law regarding works of authorship by the enactment of the 1976 Act show that the "teacher exception" has not survived to the present day. Defendants then discussed the relevant jurisprudence from the post–1976 period, dismissing as dicta all indications that the "teacher exception" might have survived the 1976 Act, and argued that case law in related fields indicates a presumption against continued application of the "teacher exception." Finally, Defendants analyzed the effect of UPR's policy regarding ownership of intellectual property in light of the work-for-hire doctrine, concluding that Plaintiffs' Proposal indeed constitutes work-for-hire under the relevant jurisprudence.[1]

## II. WORK FOR HIRE DOCTRINE AND THE COMMON LAW "TEACHER EXCEPTION"

At this juncture, the Court must assume the role of a legal historian in order to unearth the octogenarian common law roots of a "teacher exception" in order to determine if this relic has survived the years and silently incorporated itself into modern day copyright law. Accordingly, the Court shall begin its discussion at the birth of the "teacher exception" while the 1909 Copyright Act and common law of copyright were still the law of the land.

Although the 1909 precursor to the present Copyright Act mentioned a "work for hire" doctrine under which employers could qualify as "authors", the doctrine under that Act was not further defined and courts were left to apply this ambiguous doctrine without further guidance. *See e.g. Cmty. for Creative Non–Violence v. Reid,* 490 U.S. 730, 744, 109 S.Ct. 2166, 104 L.Ed.2d 811 (1989). Ultimately, the courts of yesteryear determined that "the work for hire doctrine codified in [the 1909 Act] referred only to works made by employees in the regular course of their employment." *Id.*

It was under this framework that the first case recognizing an exception to the work for hire doctrine for professors' academic work, *Sherrill v. Grieves,* was decid-

---

1. Although the Court has considered this portion of Defendants' brief as it relates generally to the function of university policies in counteracting a work-for-hire presumption for employer ownership, it finds that a request to determine whether the Proposal constitutes a work-for-hire based upon the merits of the instant case is at this time premature as discovery has not yet concluded. Further, such an inquiry would proceed under a summary judgment standard for weighing the sufficien-cy of the evidence and, as it includes no separate statement of material facts as required by Local Rule 56(b), the request for summary judgment would be summarily denied. *See Morales v. A.C. Orssleff's EFTF,* 246 F.3d 32, 33 (1st Cir.2001)(affirming this District Court's grant of summary judgment where the Court refused to consider facts which were not presented in compliance with the precursor to the current anti-ferreting rule).

ed. *See* 57 Wash. L.Rep. 286. In that case, a military instructor drafted a textbook of his own initiative and during his leisure time once he discovered that no textbook matching his course's curriculum existed. *Id.* at 290. Prior to publication of the textbook, the instructor authorized publication of a pamphlet which incorporated a portion of the book. *Id.* Later, the defendant incorporated portions of that pamphlet in two books which he authored and, once sued, claimed that the military instructor did not own the copyright to the pamphlet because it was produced for his military employer. *Id.* at 286–87. Ultimately, the Supreme Court for the District of Columbia held that the pamphlet was not a work for hire, stating that "[t]he court does not know of any authority holding that ... a professor is obliged to reduce his lectures to writing or if he does so that they become the property of the institution employing him." *Id.* at 290. Thus the "teacher exception" was born.[2]

The next case to apply the common law "teacher exception" prior to enactment of the 1976 Act was *Williams v. Weisser*, a California case. *See* 153 U.S.P.Q. 866, *aff'd* 273 Cal.App.2d 726, 78 Cal.Rptr. 542. In that case, decided under California's common law of copyrights in 1967 and appealed in 1969, the trial court once again held that a professor retained the copyright to his lectures, adding that this copyright also extends to other unspecified writings. 153 U.S.P.Q. at 868. Unlike the plaintiff in *Sherrill*, the plaintiff in *Williams* had not written the contents of his lectures in the form of a textbook; in fact, the plaintiff had not reduced his lectures to a written form at all. *Id.* at 867. Rather, defendant, a company that sold college notes, placed a note-taker in the

plaintiff's class and subsequently printed and sold the notes taken by the note-taker during the plaintiff's lectures. *Id.*

When sued, the defendant countered by stating that the plaintiff had no standing to sue as the copyright to his lectures was held by the university, rather than by the professor himself. *Id.* at 866–67. Interestingly, the trial court placed great emphasis on a letter circulated by the university to its professors in which the university informed the professors that they, not the university, held copyright to their lectures under California common law. *Id.* at 867–68. The court in that case concluded that this letter constituted the "apparent relinquishment of any rights to such literary property by the university, if indeed it possessed any." *Id.*

Upon appeal, the court rejected defendant's assertion that the plaintiff was an employee whose work fell under the work for hire doctrine. 273 Cal.App.2d at 734–35, 78 Cal.Rptr. 542. Therein, the appeals court cited *Sherrill*, as well as several English and Scottish common law cases, to support its view that copyright lies with the person who produces or delivers a lecture. *Id.* at 736–739, 78 Cal.Rptr. 542. Further, the appeals court stated that it considered lectures *sui generis*, particularly in light of the peripatetic nature of professors, and emphasized that "[n]o reason ha[d] been suggested why a university would want to retain the ownership in a professor's expression" in reaching its determination. *Id.* at 734–735, 78 Cal.Rptr. 542. This case marks the second and last application of the common law "teacher exception" to date.

Before the Court moves on to discuss the 1976 Copyright Act and its conse-

---

2. The exception was not referred to by this name, however, until the 1983 case of *New York Southern District Court in Town of*

*Clarkstown v. Reeder*, 566 F.Supp. 137, 143 n. 3 (S.D.N.Y.1983), so named it in dicta.

quences for the work for hire doctrine and the potential application of a "teacher exception," the Court finds it pertinent to note that, prior to the enactment of the 1976 Act, at least one case declined to apply a "teacher exception" to a professor's work product. *See Manasa v. Univ. of Miami*, 320 So.2d 467. In the brief opinion rendered by the Florida appeals court,[3] they distinguished that case, which centered around ownership of a copyright to a proposal for an academic program, from *Williams* based upon the type of document involved. *Id.* The court then decided that the proposal was created within the scope of the plaintiff's employment and, accordingly, that the professor was not entitled to recover for copyright infringement against the university for use of the proposal. *Id.*

When Congress enacted the 1976 Copyright Act, replacing the 1909 Act and abolishing all state common law regarding copyright, it set forth a more detailed outline of the work for hire doctrine than that contained in the 1909 Act. *See* 17 U.S.C. § 301(a)(containing the expression of preemption); 17 U.S.C. § 101 (containing the expanded definition of work for hire). Specifically, under the 1976 Act, a work for hire is defined as:

(1) *a work prepared by an employee within the scope of his or her employment;* or

(2) a work specially ordered or commissioned for use as a contribution to a collective work, as a part of a motion picture or other audiovisual work, as a translation, as a supplementary work, as a compilation, as an instructional text, as

a test, as answer material for a test, or as an atlas, if the parties expressly agree in a written instrument signed by them that the work shall be considered a work made for hire.

17 U.S.C. § 101 (emphasis ours). Thus, where a work falls within the scope of the work for hire doctrine, the employer, rather than the author, is deemed the owner of the copyright, "unless the parties have expressly agreed otherwise in a written instrument signed by them." 17 U.S.C. § 201(b).

The question of whether the "teacher exception" created by *Sherrill* and *Williams* survived the enactment of the 1976 Act has provided much fodder for academic debate. *See e.g.* Field, Thomas G., Jr., *From Custom to Law in Copyright*, 49 IDEA 125, 135–144 (2008); *see also* Kim, Nancy S., *Martha Graham, Professor Miller and the "Work for Hire" Doctrine: Undoing the Judicial Bind Created by the Legislature*, 13 J. INTELL. PROP. L. 337, 357–362 (Spring, 2006)(stating that, "[c]urrently, it is uncertain whether a teacher exception would survive a challenge by an institution under the work for hire doctrine"); *see also* Luppino, Anthony J., *Fixing a Hole: Eliminating Ownership Uncertainties to Facilitate University–Generated Innovation*, 78 UMKC L.REV. 367, 395–99 (Winter 2009); *see also* Ware, Robert III, *Copyrights, Professors and Public Universities*, 16 EDUC. & L.J. 251, 256–663 (2007). However, case law regarding the potential applicability of the "teacher exception" in the wake of the 1976 Act's enactment is scant, and no reported opinion exists[4] holding either that

---

**3.** This case also arose under copyright common law.

**4.** The Court notes that one unpublished opinion from the Central District of Illinois quoted the dicta from *Weinstein v. Univ. of Ill.*, 811 F.2d 1091 (7th Cir.1987), and *Hays v. Sony*

*Corp. of America*, 847 F.2d 412 (7th Cir.1988), regarding the policy behind recognizing a "teacher exception" before concluding that the university in that case intended that the disputed work would belong to the professor when it enacted its intellectual property poli-

such an exception survived or that it was extinguished by the 1976 Act. Nevertheless, two cases from the Seventh Circuit, *Weinstein v. Univ. of Ill.,* 811 F.2d 1091 (7th Cir.1987), and *Hays v. Sony Corp. of America,* 847 F.2d 412 (7th Cir.1988), have addressed the issue in dicta.

In *Weinstein,* an opinion authored by Circuit Judge Easterbrook [5] for a panel on which Judge Posner sat, the Court noted that an "academic tradition [existing] since copyright law began" vests ownership of theorem, scholarly articles and an unspecified group of "other intellectual property" created by professors in the professors themselves, rather than in the universities that employ them. 811 F.2d at 1094. However, Judge Easterbrook also admitted that the applicable statute appears "general enough to make every academic article a 'work for hire' and therefore vest exclusive control in universities rather than scholars[,]" noting that many universities now adopt policies in order to relinquish ownership of certain works to the professors who create them. *Id.* at 1093–94. The court in that case did not base its ultimate decision regarding ownership upon application of a "teacher exception," but, rather, based its finding that the disputed work, an article co-authored by the plaintiff university professor,[6] did not constitute a work for hire upon a reading of the employer-university's copyright policy and the custom within that university. *Id.* at 1094–95.

A year later, Judge Posner authored an influential opinion again discussing the common law "teacher exception." *See Hays,* 847 F.2d 412. In that case, high school teachers of business brought a copyright infringement claim against a corporation which, at the request of the teachers' school district, allegedly performed an illegal modification of a manual which the teacher-plaintiffs had authored. *Id.* at 413. The court in that case was thus tasked with rendering a determination of whether the manual constituted a work for hire. *Id.* at 416. The Court acknowledged that "it is widely believed that the 1976 Act abolished the teacher exception." *Id.* Further, the court admitted that "[t]o a literalist of statutory interpretation, the conclusion that the Act abolished the exception may seem inescapable" as there is no discussion of the "teacher exception" in the legislative history of the Act and as the exception was not included in the body of the Act itself. *Id.* However, Judge Posner, a professor himself,[7] also stated that failure to recognize a "teacher exception"

cy. *See Bosch v. Ball–Kell,* No. 03–1408, 2006 WL 2548053 (C.D.Ill.2006).

**5.** Circuit Judge Easterbrook is a well-respected jurist and has published both a book regarding corporate law and the most frequently cited corporate law article in legal scholarship. *See* Wikipedia "Frank H. Easterbrook" *available at* http://en.wikipedia.org/wiki/Frank—H.—Easterbrook.

**6.** The basic factual dispute of that case was immortalized by Judge Easterbrook as follows:

Many disputes may be compromised by converting the stakes to a common denominator such as money and splitting the difference. Few commercial disputes end up in court, because the disputants may readily compromise and move on. Other disputes are harder to resolve because they seem to involve principles for which no compromise is readily apparent. The result may be a private war. A dispute that would be resolved quickly in the commercial world may fester. We have such a dispute. It is about the order in which the names of an article's authors will be listed.

811 F.2d 1091.

**7.** The Court notes that this well-respected and influential judge is also a professor and prolific author. *See* University of Chicago Website "About Posner" *available at* http://home.uchicago.edu/rposner/.

would wreak havoc on the "settled practices of academic institutions" and would run contrary to the usual practices of academia before determining that "if forced to decide the issue, [the court might] conclude that the exception had survived the enactment of the 1976 Act." *Id.* at 416–17. However, the discussion of the "teacher exception" in this opinion was, once again, dicta, as the court found that "even if the statute abolished the teacher exception this would not necessarily spell victory for" the defendant-corporation. *Id.* at 417.

■ In 1989, the Supreme Court broke new ground in *Reid,* a case which forever changed the work for hire analysis. *See* 490 U.S. 730, 109 S.Ct. 2166. In that case, the Supreme Court established a three-step process for resolving whether a work constitutes a work for hire. 490 U.S. at 751–752, 109 S.Ct. 2166. Under this new guideline for application of the work for hire doctrine, courts are directed to first "ascertain, using principles of general common law agency,[8] whether work was prepared by an employee or an independent contractor." *Id.* at 751, 109 S.Ct. 2166. Next, courts are directed to the Act itself in order to make a determination of whether the work at dispute falls within the first or second category of works which the Act states constitute works for hire. *Id.* Finally, courts must apply the common law of agency to determine whether the work was created within the scope of employment. *See id.* at 751, 109 S.Ct. 2166 (discussing in tandem the inquiry as to whether a person is an employee and whether a work is created within the scope of employment); *see also Vanderhurst v. Colorado Mtn.*

*College Dist.,* 16 F.Supp.2d 1297, 1307 (D.Colo.1998), aff'd on other grounds 208 F.3d 908 (10th Cir.2000) (utilizing the Restatement (Second) of Agency to define "scope of employment"). In reaching its holding, the Court explicitly rejected the argument that Congress silently intended "to incorporate a line of cases decided under the 1909 Act" which advocated a different method, noting that "Congress' silence is just that-silence." *Reid,* 490 U.S. at 748–49, 109 S.Ct. 2166 (quoting *Alaska Airlines, Inc. v. Brock,* 480 U.S. 678, 686, 107 S.Ct. 1476, 94 L.Ed.2d 661 (1987))(internal quotation omitted).

In the wake of *Reid,* courts appear to have abandoned the "teacher exception" and those which cite the earlier Seventh Circuit cases do so solely in the context of determining whether teachers' work-product falls within the scope of their employment. *See Shaul v. Cherry Valley–Springfield Central School Dist.,* 363 F.3d 177, 185–86 (2d Cir.2004) (applying the *Reid* guidelines for the work for hire doctrine to materials created by a teacher without addressing a "teacher exception"); *see also Pavlica v. Behr,* 397 F.Supp.2d 519, 525–26 (S.D.N.Y.2005) (discussing *Hays* while determining whether a genuine issue of material fact existed as to whether a manual created by a high school teacher was created within the scope of his employment); *see also Vanderhurst,* 16 F.Supp.2d at 1307. Additionally, this apparent abandonment of the "teacher exception" is chronicled in a September, 2010 treatise on copyright law, which concludes that the "teacher exception," if it ever indeed existed in federal law, perished

---

**8.** The Supreme Court in *Reid,* like subsequent courts, utilized the Restatement (Second) of Agency to determine what the common law entails. *See Community for Creative Non–Violence v. Reid,* 490 U.S. 730, 751, 109 S.Ct. 2166 (1989); *see also Avtec Sys., Inc. v. Peiffer,* 21 F.3d 568, 571 (4th Cir.1994); *see also Vanderhurst v. Colorado Mtn. College Dist.,* 16 F.Supp.2d 1297, 1307 (D.Colo.1998).

with the enactment of the 1976 Act. William F. Patry, *Copyright* § 5:71 (2010 ed.).[9]

Although a state court's decisions are not binding upon this Court, the Court also notes that the one court which has squarely addressed the issue of whether the "teacher exception" survived until the present day answered that question in the negative. *See Pittsburg State University/Kansas Nat'l Edu. Ass'n v. Kansas Board of Regents/Pittsburg State University*, 280 Kan. 408, 421–24, 122 P.3d 336 (2005) (analyzing the potential application of a "teacher exception" to the 1976 Copyright Act work for hire doctrine in the wake of *Reid* ). Thus, the Court concludes that the current trend in both high-level academia and in relevant jurisprudence is to forego application of the common law "teacher exception" and to determine whether a work prepared by a teacher or professor falls within the work for hire doctrine, utilizing the steps set forth by *Reid.*

Additionally, as Posner noted in *Hays,* there is no mention of a "teacher exception" in the legislative history of the 1976 Act. *See Hays,* 847 F.2d at 416. In light of the Supreme Court's subsequent decision in *Reid* that silence on the part of the legislature regarding inclusion of common law jurisprudence indicates that such jurisprudence should not apply under the 1976 Act, the Court finds that this silence weighs heavily towards a finding that no "teacher exception" remains in existence. *See* 490 U.S. at 748–49, 109 S.Ct. 2166 (finding that legislative silence does not indicate legislative intent to include common law from prior to enactment of the 1976 Act and noting that, in other portions of the Act, where Congress intended to

include prior case law, it did so explicitly). Accordingly, the legislative history, weighs against finding that a "teacher exception" to the work for hire doctrine exists today, particularly following the Supreme Court's analysis thereof with reference to the work for hire doctrine in *Reid.*

Thus, only policy and historical custom weigh in favor of a finding that a "teacher exception" remains. Even if the Court were inclined to engage in the judicial lawmaking which would be required to resurrect the common law exception at this stage, the Court harbors serious reservations regarding the continued applicability of the policy and custom which traditionally upheld the exception. In *Williams,* the court placed emphasis on its view that universities had no reason to "want to retain the ownership in a professor's expression" in finding that a teacher exception applied. 273 Cal.App.2d at 734–35, 78 Cal.Rptr. 542. This rationale no longer rings as true as it once did, however. In an age of distance-learning and for-profit institutions of higher learning, universities stand to gain much by retaining ownership of certain works created by their employees. *See e.g.* Garon, Jon, *The Electronic Jungle: the Application of Intellectual Property Law to Distance Education,* 4 VAND. J. ENT. L. & PRAC., 146, 147–48 (Spring 2002) (discussing the economics of for-profit education and distance learning); *see also* Townsend, Elizabeth, *Legal and Policy Responses to the Disappearing "Teacher Exception," or Copyright Ownership in the 21st Century,* 4 MINN. INTELL. PROP. REV. 209, 243–44 (2003) (discussing the increasing commercialization of higher learning institutions). In fact, Plaintiffs admit as much in their brief when they

---

**9.** The Court notes that, Nimmer's preeminent treatise on copyright, which Plaintiffs cite several times in their brief states that it is "unclear" whether the "teacher exception" applies under the current Act. Melville and David Nimmer, *Copyright* § 5.03[B][1][b][I] n. 94 (2009 ed.).

argue that UPR wishes to use the Proposal for commercial, profit-maximizing reasons.

 Additionally, the policy of continuing to apply the "teacher exception" so as to defer to the "settled practices of academic institutions" and the traditional "conditions of academic production" emphasized by Judge Posner in *Hays* no longer applies with the strength which it held in 1988. Most academic institutions today have already responded to the uncertainty regarding the "teacher exception" by enacting policies, returning ownership of works traditionally copyrighted by professors to the professors themselves. *See e.g.* Denicola, Robert C., *Copyright and Open Access: Reconsidering University Ownership of Faculty Research*, 85 NEB. L.REV. 351, 379–80 (2006) (recognizing that most universities have such policies but noting that compliance with the strictures of 17 U.S.C. § 201(b) is not satisfied by many at this time); Townsend, Elizabeth, *Legal and Policy Responses to the Disappearing "Teacher Exception," or Copyright Ownership in the 21st Century*, 4 MINN. INTELL. PROP. REV. 209, 251–75 (2003) (analyzing the policies of several universities). Thus, two decades from when Posner cited his concerns for preserving academic tradition by recognizing the "teacher exception," this concern has already become *de minimis* as universities have proactively created policies that grant professors ownership of copyrights which the "teacher exception" once ensured. Accordingly, the only remaining enunciated policy concerns involve the transient nature of university professors and Plaintiffs' speculative concerns that failure to recognize a "teacher exception" would cause a chilling in academic innovation. The Court will not find that a "teacher exception" continues to exist based solely upon these two potential concerns. Accordingly, the Court rules that no such exception survived the enactment of the 1976 Copyright Act and, accordingly, Plaintiffs may claim no such exception in relation to Defendants' work for hire defense.

Thus, the Court must resolve the instant case within the framework of the work for hire doctrine, utilizing the standard set forth in *Reid* as well as considering any relevant University regulations specifically recognizing professor or university ownership over certain works.

**IT IS SO ORDERED.**